EL PUEBLO DE PUERTO RICO, en el interés del menor J. L. D. R.

*Número:* O-82-464    *Resuelto:* 30 de junio de 1983

**I**

*José Hamid Rivera* y *Alfredo Roche Acosta*, de Servicios Legales de Puerto Rico, abogados del peticionario; *María Laura Colón, amicus curiae; Miguel Pagán, Procurador General Interino*, y *Josefa A. Román García, Procuradora General Auxiliar*, abogados de El Pueblo.

PER CURIAM: El menor de edad aquí en controversia fue detenido el 20 de mayo de 1982 por agentes de la Policía de Puerto Rico en relación con una supuesta infracción a la Ley de Sustancias Controladas. Ese día fue citado, en forma verbal, para que compareciera ante el tribunal de instancia el día 27 de mayo de 1982 en relación con la vista judicial de determinación de causa probable que dispone la Regla 5.1 de las Reglas de Procedimiento para los Asuntos Cubiertos por la Ley Núm. 97 de 23 de junio de 1955, comúnmente conocida como la Ley de Menores, Reglas en vigor desde el 30 de julio de 1959, según han sido subsiguientemente enmendadas. A la referida vista el menor asistió acompañado de su señora madre. Celebrada la misma, el tribunal de instancia encontró causa probable, ordenándose la radicación de la correspondiente querella. Mediante moción de fecha 29 de junio de 1982, abogados de Servicios Legales de Puerto Rico, Inc. en representación del menor alegaron que:

La determinación de causa probable del 27 de mayo de 1982 es *nula* por cuanto:

a) Viola las disposiciones de la Ley #121 del 12 de junio de 1980, en cuanto ella requiere expresamente representación legal para el menor.

b) Niega la garantía constitucional del debido procedimiento de ley porque:

1— no se proveyó debida notificación con suficiente antelación al señalamiento de la vista, que permitiese al menor

prepararse para la misma y ejercitar cabalmente los derechos que la Ley #121, supra, le concede.

2— se incumplió con las disposiciones de la Ley #121 citada, que garantizan derechos fundamentales de libertad (representación legal, contrainterrogatorio y presentación de prueba), los cuales quedan protegidos bajo la cláusula constitucional del debido procedimiento de ley.

En la súplica de la referida moción, la representación legal del menor solicitó de instancia el que:

a) se sirva señalar vista para la discusión de la presente moción;

b) suspenda la vista en su fondo señalada para el 6 de julio de 1982;

c) anule la determinación de causa probable hecha el 27 de mayo de 1982;

d) ordene la celebración de una vista preliminar para determinar causa probable en la cual se cumpla cabalmente con lo dispuesto en la Ley #121 del 12 de junio de 1980.

e) ordene que la vista a que se refiere el inciso (d), ante, se notifique formalmente al menor con por lo menos diez días de antelación, para éste tener una oportunidad razonable de preparar su causa e implementar sus derechos bajo la citada Ley #121.

La Sala de Asuntos de Menores de Guayama del Hon. Tribunal Superior de Puerto Rico, previa celebración de vista, declaró sin lugar la moción radicada, por el fundamento de que "El propio menor admitió en la silla de testigos que le habían hecho las advertencias de ley los agentes que intervinieron con él en la primera etapa *y además que le hablaron de los abogados de Servicios Legales antes de la vista, a señalarse en el Tribunal el día 27 de mayo*". (Énfasis suplido.) Habiendo acudido ante este Tribunal la representación legal del menor imputándole error al tribunal de instancia al así actuar, expedimos el correspondiente auto de *certiorari*. Estando en condiciones de resolver el recurso, procedemos a así hacerlo. [1]

---

[1] Nos preocupa el señalamiento que hace el *amicus curiae* en su alegato a los

# I

La razón de pedir del menor recurrente tiene su raíz en la enmienda que sufriera la citada Regla 5.1 mediante la Ley Núm. 121 de 12 de junio de 1980, la cual, en lo pertinente, dispone en la actualidad que:

Previo a la radicación de la querella en el interés del menor, el Tribunal celebrará una vista judicial de determinación de causa probable. Dicha vista será presidida por un juez del Tribunal de Primera Instancia o Juez Municipal. *En dicha vista el menor tendrá derecho a estar representado por abogado, podrá contrainterrogar testigos y ofrecer prueba en su favor.* (Énfasis suplido.)

La posición del recurrente es a los efectos de que en virtud de la disposición legal antes citada, él no solamente tenía derecho a estar asistido de abogado en la vista del 27 de mayo de 1982, sino que debió haber sido "previa, oportuna y adecuadamente notificad[o]" sobre esos derechos y que cualquier vista de determinación de causa probable en relación con la cual no se le haya hecho a un menor las correspondientes advertencias o se haya celebrado la misma sin la presencia de un abogado, es totalmente nula.

Un análisis de la intención legislativa respecto a la Ley Núm. 97 de 23 de junio de 1955, comúnmente conocida como la Ley de Menores, de la Ley Núm. 121 de 12 de junio de 1980, de los principios generales que rigen la materia de interpretación de las leyes, y de la doctrina y jurisprudencia aplicables, nos inclina hacia la posición de que, a pesar de que en parte le asiste la razón al recurrente, la enmienda producida por la referida Ley Núm. 121 no tiene el alcance y consecuencia que éste propugna.

---

efectos de que distintas salas del tribunal de primera instancia han resuelto el referido planteamiento en diferentes formas. Se nos señala que algunas salas han anulado la determinación de causa probable y han ordenado la celebración de una nueva vista; otras han llegado al extremo de ordenar el archivo y sobreseimiento de todo el procedimiento.

█ El procedimiento que se establece en la llamada Ley de Menores para bregar con el problema del menor que se extravía es sui géneris. *R.A.M.* v. *Tribunal Superior*, 102 D.P.R. 270 (1974). Ello queda palpablemente demostrado por disposiciones como la del Art. 11 de la referida ley, 34 L.P.R.A. sec. 2011, en la que se establece que este procedimiento nunca podrá considerarse como de naturaleza criminal, no puede aparejar la pérdida de derechos civiles y no puede considerarse nunca al menor como un criminal o convicto, como tampoco podrá tomarse en consideración para cualquier solicitud de empleo o nombramiento para un puesto o cargo dentro del servicio público.

█ Debemos mantener presente que al interpretar una ley hay que tener siempre en cuenta el propósito que motivó al legislador a aprobar la misma. *Cirino* v. *Fuentes Fluviales*, 91 D.P.R. 608 (1964). Se expresa en la exposición de motivos de la Ley Núm. 97 que el "propósito de esta ley *es proveer a los niños abandonados o desajustados, preferiblemente en sus hogares, la atención y orientación necesarias para su bienestar, en armonía con el interés público;* mantener y fortalecer las relaciones de dichos niños con sus familiares; privar provisional o permanentemente a los padres de la custodia de un niño *solamente cuando el bienestar de éste o el interés público lo justifiquen, y brindarle, en la medida que sea posible, la orientación y atención que debió recibir en su hogar*". (Énfasis suplido.)

█ El legislador al aprobar esta ley nunca tuvo en su mente el establecer un procedimiento de tipo adversativo —como en el caso de los adultos— en donde el menor tendría que comparecer ante un tribunal a defenderse, asistido de un abogado, de las imputaciones que le hiciera un funcionario en nombre del Estado y en donde la función principal del magistrado que presida el procedimiento fuera la de resolver sobre culpabilidad o inocencia.[2]

---

[2] De ello no ser así, no tendría lógica alguna ni razón de ser el haber establecido un tribunal para bregar exclusivamente con asuntos de menores, totalmente separado del tribunal de adultos.

■ Lejos de ello, como hemos visto, la función del magistrado en el tribunal de menores, por mandato expreso de la ley, más bien se asemeja a la de un segundo padre, imponiéndole a éste el deber y la obligación de orientar al máximo al menor, ayudándolo en todo lo que esté a su alcance, teniendo como objetivo principal los mejores intereses del menor, sin poder considerarlo y tratarlo como a un delincuente común y corriente. Mientras que en el procedimiento criminal referente a adultos el tribunal tiene que tener en mente *el castigo al delincuente* y la rehabilitación de éste, en el procedimiento establecido por la Ley Núm. 97 no existe, como objetivo, el castigo del menor; sólo existe, como meta, el bienestar del menor.

En resumen, ha imperado siempre en nuestro ordenamiento jurídico "la norma de separación entre los procedimientos relativos a menores y los procesos penales aplicables a adultos, y hemos señalado . . . que aquéllos no se considerarán de naturaleza criminal, sino que gozan de una naturaleza especial *sui generis*". *Pueblo ex rel. L.V.C.*, 110 D.P.R. 114, 124 (1980).

■ Ello, obviamente, fue la razón de ser de la doctrina a los efectos de que las garantías constitucionales que puede reclamar un menor en estos procedimientos se determinan de los requisitos del debido procedimiento y trato justo, y no de la aplicación directa de las diversas cláusulas constitucionales que garantizan tales derechos en procedimientos criminales ordinarios. *ELA en Interés R.M.R.*, 83 D.P.R. 242, 248 (1961).

■ Es correcto que la referida Ley Núm. 121, al enmendar la Regla 5.1 antes citada, no sólo estableció una "vista judicial de determinación de causa probable", sino que dispuso que en dicha vista el menor "tendrá derecho a estar representado por abogado, podrá contrainterrogar testigos y ofrecer prueba en su favor".

De la exposición de motivos de la citada Ley Núm. 121 surge la preocupación del legislador con el procedimiento

hasta entonces vigente, mediante el cual la determinación de causa probable se hacía a base de la investigación e informe de un trabajador social. Ello tenía el efecto, según el legislador, de que se radicaran "anualmente ante las Salas de Menores infinidad de casos en los que no existe prueba suficiente para sostener la radicación de una querella . . .". Ello causó que el legislador, al aprobar la Ley Núm. 121, tuviera como objetivo principal el establecer, en protección adicional de los derechos de los menores, un sistema en donde la determinación de causa probable para la radicación de una querella contra un menor fuera una "función de la exclusiva competencia de los miembros de la judicatura, desde el examen de testigos hasta la determinación final".

█ Dicha vista judicial, sin embargo, no existe por sí sola y en el vacío. Aunque de nueva creación, es parte integrante de la Ley de Menores. El propósito de la referida Ley y la función del juez que preside la vista siguen siendo los mismos: actuar en interés del menor. El abogado que se le provee al menor en dicha vista judicial obviamente está allí para ayudar al magistrado en el descargo de esa responsabilidad. Su comparecencia no tiene el efecto de convertir el procedimiento en uno de tipo adversativo ni cambia, como por arte de magia, la naturaleza del mismo. Con el abogado o sin él, el menor sigue contando con la protección de la ley, que le impone al magistrado, como dijimos anteriormente, el deber y la obligación de tener siempre como guía el bienestar del menor.

█ No empece lo anteriormente expresado, no hay duda de que la Ley Núm. 121 concede al menor el derecho de estar asistido de abogado en dicha vista, de contrainterrogar a los testigos y de presentar prueba. El ejercicio de un derecho, de ordinario, presupone el estar notificado sobre el mismo previa, oportuna y adecuadamente.[3] En

---

[3] *McBride* v. *Jacobs*, 247 F.2d 595 (1957).

consecuencia, resolvemos que las autoridades que detienen a un menor y lo citan para la celebración de la vista judicial de determinación de causa probable vienen en la obligación, en adición a informarle al menor sobre la falta que se le imputa, de advertirle a éste sobre los derechos que le concede la citada Ley Núm. 121. Consideramos que es una norma saludable que redunda en beneficio del menor y que "los requisitos del debido procedimiento y trato justo", *ELA en Interés R.M.R.*, supra, pág. 248, así exigen que se haga. Sobre todo cuando consideramos que ello no resulta oneroso para las autoridades concernidas; se trata de unas simples advertencias.[4]

Dicho derecho —el cual es uno de los relacionados con el "derecho a un juicio justo e imparcial"— puede ser objeto de renuncia, siempre y cuando dicha renuncia sea hecha consciente e inteligentemente, correspondiéndole la obligación de así establecerlo al Estado. *Schneckloth* v. *Bustamonte*, 412 U.S. 218 (1973); *Pueblo* v. *Acevedo Escobar*, 112 D.P.R. 770 (1982). Los tribunales de instancia, al enfrentarse al planteamiento aquí en controversia, deberán resolver el mismo de acuerdo con los hechos de cada caso en particular. Recordando que, éste no es un procedimiento de tipo adversativo y que la función principal del tribunal en el mismo es velar por el interés del menor, deberán mantener presente que la cuestión primaria por resolver es si dentro del procedimiento observado en el caso en específico, a la luz de la totalidad de las circunstancias presentes, el menor fue adecuadamente informado de los derechos que le asisten y de la falta que se le imputó, y si tuvo una razonable oportunidad de defenderse de la misma y de presentar su versión de los hechos.

---

[4] Sería conveniente que dichas advertencias, además de serles explicadas al menor verbalmente, se hicieran formar parte del impreso que se utiliza para la citación del menor para la vista judicial de determinación de causa probable. Ello no sólo es una garantía adicional de que el menor y su familia serán informados de dichos derechos, sino que sirve como constancia de ello.

En consecuencia y en relación con aquellos casos que a la fecha de la presente opinión estén pendientes en instancia de la celebración de la vista adjudicativa, se ordenará, como norma general, la celebración de una nueva vista de determinación judicial de causa probable en los casos en que no se le hubiera hecho al menor las advertencias correspondientes a los derechos concedidos por la citada Ley Núm. 121; excepción hecha en el caso en que el menor, no obstante no haber sido advertido de dichos derechos, haya comparecido a la referida vista asistido de abogado y el tribunal concluya, examinadas las circunstancias específicas, que los derechos del menor estuvieron adecuada y efectivamente protegidos. Tampoco procederá la celebración de una nueva vista en el caso en que, habiendo sido advertido el menor de sus derechos bajo la Ley Núm. 121, independientemente del hecho de que no estuviera asistido de abogado en la vista ya celebrada de causa probable, el tribunal concluya que medió una renuncia consciente e inteligente de los mismos. En ningún caso procederá el archivo y sobreseimiento definitivo del procedimiento.

En relación con aquellos casos en que ya se celebró a nivel de instancia la vista adjudicativa de la querella, la situación es completamente distinta. Resolvemos que en dichas situaciones no procede la celebración de una nueva vista de causa probable, independientemente de que el menor fuera advertido o no de los derechos concedidos por la Ley Núm. 121 y de que estuviera asistido o no de abogado. Entendemos que el posible perjuicio que por ello haya podido sufrir el menor queda subsanado dado el caso de que en la vista adjudicativa estuvo asistido de abogado, tuvo la oportunidad de contrainterrogar los testigos y de presentar prueba a su favor. Dicha conclusión queda fortalecida si recordamos que la razón principal por la cual el legislador estableció, mediante la citada Ley Núm. 121, la vista judicial de determinación de causa probable fue para evitar el que se radicaran "ante las Salas de Menores infinidad de

casos en los que no existe prueba suficiente para sostener la radicación de una querella. . . ". Si la prueba desfilada en la vista adjudicativa fue, en opinión del tribunal, suficiente para encontrar al menor incurso en la falta imputada, obviamente era más que suficiente para la determinación de causa probable.

## II

Resolvemos el presente recurso a la luz de lo arriba expuesto y sus hechos específicos. Un examen cuidadoso de la transcripción que se hiciera de la declaración que el menor prestara en la vista que celebrara el tribunal de instancia revela que, a pesar de que es correcta la conclusión a la que llegó dicho tribunal a los efectos de que los agentes de la Policía de Puerto Rico *le hablaron* [al menor] de los abogados de Servicios Legales antes de la vista, a señalarse en el Tribunal el día 27 de mayo" (énfasis suplido), dichas advertencias no fueron lo completas, claras y específicas que deben ser de ordinario. Siendo ello así, no puede resolverse que el menor renunciara a esos derechos en forma consciente e inteligente. En vista de ello, y habiéndose celebrado la vista judicial de determinación de causa probable sin que el menor estuviera asistido de abogado y estando el caso todavía pendiente de la celebración de la vista adjudicativa, procede que se celebre una nueva vista judicial sobre causa probable.

Por las razones expuestas, *se revoca la resolución de fecha 6 de julio de 1982 que emitió el tribunal de instancia en el presente caso y se devuelve el mismo para la continuación de los procedimientos correspondientes.*

El Juez Presidente Señor Trías Monge concurre en el resultado sin opinión y el Juez Asociado Señor Negrón García emitió opinión concurrente y disidente.

—O—

Opinión concurrente y disidente del Juez Asociado Señor Negrón García.

## I

En el ámbito público este recurso revela la urgencia de una reforma integral del sistema de justicia juvenil que aclare su marco filosófico. En el orden jurídico, es preciso definir la naturaleza y propósitos de la vista de determinación de causa probable consagrada en la Ley Núm. 121 de 12 de junio de 1980, y su interacción con la Núm. 97 de 23 de junio de 1955, según enmendada, denominada Ley de Menores de Puerto Rico. La primera estableció el derecho a una vista judicial de determinación de causa probable, previa la radicación de querella en interés de un menor, en la cual éste tendrá derecho a estar representado por abogado, contrainterrogar testigos y ofrecer prueba a su favor. Y en el aspecto procesal, se hace necesario evaluar el reclamo del menor peticionario de que no fue previa, oportuna y adecuadamente notificado de su derecho a asistencia legal para esa vista, como tampoco de su derecho a contrainterrogar y presentar allí prueba, y de ser notificado clara y específicamente de las faltas que se le imputan.

## II

Una breve referencia sobre la evolución que ha venido experimentando el sistema de justicia juvenil nos ayuda a conocer el efecto y alcance en los procedimientos de menores.

La Ley Núm. 97 sustrajo a los menores delincuentes del ámbito criminal. Reconoció la función tutelar del Estado en el ejercicio de su facultad inherente como *parens patriae*, inspirado en una nueva orientación rehabilitadora y educativa del menor que se enfrenta al sistema de justicia

juvenil.(¹) Los procedimientos informales ante los tribunales de menores tenían el propósito de proteger al menor de los rigores de un proceso criminal, bajo el entendido de que la formalidad y la naturaleza adversativa de éste no propiciaba la atención adecuada a su particular situación y bienestar. No obstante, a partir de las decisiones del Tribunal Supremo de los Estados Unidos en *Kent* v. *United States,* 383 U.S. 541 (1966), e *In re Gault,* 387 U.S. 1 (1967), se comenzó a percibir que la ausencia de garantías procesales básicas de origen constitucional en los procedimientos de menores propiciaban un alto grado de arbitrariedad. Se abogó por el establecimiento de un justo balance entre la aplicación de los principios del debido procedimiento de ley y la naturaleza y propósitos especiales del procedimiento juvenil. Este enfoque cobró vitalidad en nuestra jurisdicción. Así, se fueron extendiendo más garantías al proceso como respuesta a la necesidad de lograr una mayor protección y trato justo al menor, pero evitando enmarcar el proceso dentro de unos límites de formalismo. Véanse, *Pueblo* v. *Figueroa González,* 95 D.P.R. 99 (1967); *R.A.M.* v. *Tribunal Superior,* 102 D.P.R. 270 (1974).

Desde antes de la decisión de *Gault,* supra, nuestro ordenamiento admitía el derecho del menor y sus padres a ser notificados de su aprehensión y detención (Art. 7, Ley Núm. 97 (34 L.P.R.A. sec. 2007)); otorgaba al menor el derecho de estar asistido de abogado (Reglas 8.2 y 8.3); y el derecho a vista (Reglas 13.1 y 13.2). Nuestra jurisprudencia amplió para cubrir: el derecho a la no incriminación; la presunción de inocencia; que la determinación de delincuencia esté sujeta a la norma de duda razonable; la corroboración de una confesión; y a estar representado por abogado en todas las etapas críticas del proceso. *Pueblo* v. *Figueroa González,* supra, pág. 102; *R.A.M.* v. *Tribunal*

---

(¹) Sobre sus principios filosóficos consúltese, G. Lasa Díaz, *Principios fundamentales que rigen la moderna legislación de menores,* 32 Rev. Jur. U.P.R. 635, 639 (1963).

*Superior,* supra, pág. 273; *Pueblo ex rel. F.B.M.,* 112 D.P.R. 250 (1982).[2]

No es hasta años recientes que surgen recomendaciones modificadoras de la visión en la filosofía paternalista y tutelar que tradicionalmente ha informado el sistema de justicia juvenil. Para sustituir el enfoque social del presente, —que sirve de sostén para los fundamentos de informalidad, falta de consistencia y subjetividad del procedimiento— se ha propuesto un procedimiento más legalista. Se sugiere la aplicación extensiva a todas las varias etapas del proceso, de las normas de su debido procedimiento, para lo cual se ha propuesto la alteración de algunos principios básicos del sistema.

En Puerto Rico se ha sentido esa influencia. Ejemplos son la Ley Núm. 91 de 12 de julio de 1979, que prescribe que los menores indisciplinados se refieran, en primer lugar, al Departamento de Servicios Sociales antes que al Tribunal de Menores, y la Ley Núm. 75 de 28 de mayo de 1980, que establece un procedimiento en dicho Departamento para los casos de abuso y negligencia de menores. Aunque subsiste la jurisdicción del Tribunal de Menores en estas circunstancias, ambos estatutos plasman el criterio legislativo de que el procedimiento juvenil debe ser utilizado sólo para menores transgresores de la ley.

Otra instancia es la Ley Núm. 121 que nos ocupa, que diseña la vista judicial para la determinación de causa probable. Como sugiere su nombre, no es una vista preliminar a manera de la contemplada en el procedimiento criminal de adultos. Regla 23 de las de Procedimiento Criminal de 1963. Sus objetivos consistieron principalmente en eliminar que dicho dictamen estuviese basado en la investigación y recomendación del oficial probatorio o

---

[2] Derechos tales como el juicio por jurado, juicio público y fianza no han sido incorporados a los procedimientos de menores, por no obedecer a los mejores propósitos del sistema.

trabajador social adscrito al tribunal y evitar que el juez que determinó causa probable, asistido por tal investigación, fuese el mismo que presidiera la vista adjudicativa.

Esta ley fue objeto de análisis en el Informe del Comité de Justicia Juvenil de la Conferencia Judicial de octubre de 1980. Sobre el particular se presentó un análisis histórico del procedimiento inicial en los casos de menores, un cuadro comparativo general con otras jurisdicciones, y sus fallas y problemas básicos. Entre éstos se consignó lo siguiente:

> El tercer problema que presenta la Ley 121 es que establece una vista de naturaleza adversativa en la medida que permite al menor presentar prueba a su favor. A juicio del Comité una vista de determinación de causa probable donde un juez pueda pasar juicio sobre la suficiencia de una querella, sobre los elementos de la comisión de una falta, sobre la identidad del menor como presunto transgresor y la necesidad de su detención, *es adecuada*. La vista adjudicativa en su día permitirá al menor refutar la prueba que en su contra se presente y en la medida en que se apliquen los principios de juicio rápido ello no tardará más de lo razonable.[3] (Énfasis suplido.) Pág. 148.

Precisamente ese carácter adversativo y de naturaleza formalista de la reciente legislación parece estar en conflicto con la filosofía paternalista y tutelar de la Ley de Menores, la cual, según indicado, descansa en la flexibilidad en los procedimientos. Tanto los escritos presentados por el menor como por el *amicus curiae* están dirigidos hacia el reconocimiento de formalidad en dichos procedimientos.[4]

---

[3] El P. del S. 51, que propone una nueva Ley de Menores, y que surgió de las recomendaciones del Informe antes mencionado, dispone en su Art. 19 que la vista de determinación de causa probable se llevará a cabo conforme al procedimiento establecido en las Reglas de Procedimiento para Asuntos de Menores. El proyecto de Reglas elimina el derecho del menor de presentar prueba a su favor en dicha vista. Proyecto de Reglas de Procedimiento para Asuntos de Menores, Regla 14; Informe del Comité de Justicia Juvenil de la Conferencia Judicial, 1980, anejo II, pág. 5.

[4] Por vía ilustrativa, en la primera cuestión de derecho planteada el menor

Esta orientación forense proviene de la preocupación durante los últimos años sobre el futuro del sistema de justicia juvenil, de naturaleza sui géneris, frente a la tendencia de asemejar o equiparar el procedimiento a los métodos rigurosos clásicos del encausamiento criminal para adultos. En ausencia de una reforma integral en nuestro ordenamiento vigente, hasta qué punto podría ello alterar los propósitos de la legislación de menores con los cambios introducidos, es algo que nos corresponde resolver. Informe sometido al Consejo sobre la Reforma de la Justicia en Puerto Rico, por la Comisión de Menores y Relaciones de Familia, 1976, págs. 204-207. Se ha propuesto que se adopte como marco filosófico de nuestro sistema de justicia juvenil un enfoque *ecléctico* que, sin rechazar la función rehabilitadora del proceso, introduzca el reconocimiento de derechos y salvaguardas procesales adicionales a las ya reconocidas y exija al menor responsabilidad por sus actos. Sin embargo, ello aún no se ha concretado. La variación de enfoque corresponde a la Asamblea Legislativa. Véase, Informe del Comité de Justicia Juvenil de la Conferencia Judicial, *supra*, pág. 14; P. del S. 51 de 9 de febrero de 1981, aprobado por el Senado en 3 de febrero de 1983 y ante la consideración de la Cámara de Representantes. Hasta tanto se efectúe esa revisión, el poder judicial debe evitar considerar aisladamente las medidas que enmiendan la Ley de Menores, fuera del contexto del carácter especial de ésta, aunque estamos conscientes de los intentos legislativos y las medidas adoptadas tendentes a formalizar el proceso. La Ley Núm. 121, *supra*, ciertamente apunta hacia esa formalidad.

## III

En el caso de autos, el menor no fue debidamente advertido de su derecho a asistencia de abogado, en cumplimiento

---

argumenta que debe notificarse el hecho de que se enfrenta "a un proceso *formal* ante un tribunal".

de la ley. Sobre este extremo coincidimos con la revocación de la resolución de 6 de julio de 1982, objeto del recurso, y el mandato que devuelve el caso para la continuación de los procedimientos.

Sin embargo, disentimos del pronunciamiento que dispone la celebración de una *nueva* vista de determinación de causa probable en aquellos casos pendientes en instancia de la celebración de la vista adjudicativa, ya que entendemos que la decisión que imprime carácter formal a la Ley Núm. 121 debe ser de carácter prospectivo. Precisamente, el carácter especial de la Ley de Menores, a manera de la argumentación de la opinión de este Tribunal, ha dado margen a la laxitud en la aplicación de dicha ley. A partir de la presente, estamos de acuerdo en que las autoridades que detienen a un menor deben informarle la falta que le imputan y advertirle adecuadamente de los derechos que le concede la Ley Núm. 121. Finalmente, también disentimos de los pronunciamientos y demás consideraciones sobre la renuncia por los menores del derecho a abogado, asunto que por el resultado no es necesario abordar y que ha suscitado serias controversias que deben ser objeto de análisis más detenido. Informe del Comité de Justicia Juvenil de la Conferencia Judicial, *supra*, págs. 27–28.