EL PUEBLO DE PUERTO RICO en interés del menor R.H.M., apelante.

*Número:* CE-87-391          *Resuelto:* 14 de mayo de 1990

*Jaime L. Rivera Suárez,* de *Servicios Legales de Puerto Rico, Inc.,* abogado del apelante; *Rafael Ortiz Carrión, Procurador General, Norma Cotti Cruz, Subprocuradora General,* y *Marjorie Rivera Rodríguez, Anabelle Rodríguez* y *Awilda Irizarry Pardo, Procuradoras Generales Auxiliares,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

Este caso es un ejemplo dramático de los serios problemas sociales que tenemos en Puerto Rico a causa de los actos delictivos perpetrados por jóvenes y la disyuntiva entre el deber estatal de rehabilitación y la aplicación de una sanción coercitiva contra delincuentes juveniles. Ante nos el peticionario impugna los criterios utilizados por el Tribunal de Menores para renunciar a su jurisdicción luego de que el Procurador para Asuntos de Menores (Procurador) le presentara varias querellas por faltas graves acompañadas de circunstancias agravantes. El recurso nos permite expresarnos sobre los criterios a seguir cuando se ventile un proceso de renuncia de jurisdicción al amparo de la nueva Ley de Menores de Puerto Rico.

## I

Contra el menor R.H.M. se presentaron querellas por asesinato, robo y violaciones a los Arts. 6 y 8 de la Ley de Armas de Puerto Rico, 25 L.P.R.A. secs. 416 y 418. Se le imputó haber dado muerte a otro adolescente, Natalio Bayonet Tartak, utilizando un revólver que portaba y poseía ilegalmente. También se alegó en su contra haber despojado de un auto por medio de intimidación y violencia a los jóvenes Juan Ramón Pérez Pérez y Carmen Milagros Lucca. Se determinó causa probable en todas las querellas y el Procurador le solicitó al Tribunal de Menores la renuncia de su jurisdicción sobre el imputado a tenor con el Art. 15(a) de la Ley de Menores de Puerto Rico, 34 L.P.R.A. sec. 2215(a).

Recibida toda la prueba, el tribunal de instancia renunció a la jurisdicción sobre el menor imputado y ordenó el traslado de los casos a la jurisdicción ordinaria para que se ventilaran allí como si se tratara de un adulto. De dicha resolución el menor apela ante este Tribunal[1] y nos señala la comisión de una serie de errores que, en síntesis, van dirigidos a cuestionar los criterios utilizados por el tribunal de instancia para renunciar a la jurisdicción del menor, así como a requerir un *quantum* de prueba mayor al de preponderancia de la prueba. Por los fundamentos que se exponen a continuación, se confirma la sentencia dictada por el Tribunal Superior.

## II

La Ley de Menores de Puerto Rico, Ley Núm. 88 de 9 de julio de 1986 (34 L.P.R.A. sec. 2201 y ss.), parte de un criterio filosófico ecléctico por el cual armoniza la responsabilidad de *parens patriae* del Estado en cuanto a la rehabilitación de los menores ofensores y la responsabilidad de éstos por sus actos. En

---

[1] También solicitó mediante moción en auxilio de jurisdicción que paralizáramos los procedimientos para evitar que se siguiera el trámite judicial como adulto. Mediante Resolución de 11 de junio de 1987, nos negamos a concederle el remedio solicitado.

conformidad con esa visión, el estatuto utiliza el enfoque de *quantum* de responsabilidad para excluir a los menores que realizan un acto de tal naturaleza que, en unión a una serie de circunstancias, hace imprescindible que respondan ante las autoridades con todo su rigor. Véase J.L. Morán, *Sistema de justicia juvenil, exclusión de jurisdicción, renuncia de jurisdicción*, 49 Rev. C. Abo. P.R. 105 (1988).

▮▮▮ El mecanismo de renuncia de jurisdicción está dispuesto en el Art. 15 de la Ley de Menores de Puerto Rico, que provee:

Artículo 15.—Renuncia de jurisdicción
(a) *Solicitud por Procurador.*—El Tribunal, a solicitud del Procurador, podrá renunciar la jurisdicción sobre un menor que sea mayor de catorce (14) años y menor de dieciocho (18) años, a quien se le impute la comisión de cualquier falta Clase II ó III. El Procurador deberá efectuar dicha solicitud mediante moción fundamentada cuando considere que entender en el caso bajo las disposiciones de esta ley no responderá a los mejores intereses del menor y de la comunidad.

El Procurador vendrá obligado a promover la solicitud cuando, previa determinación de causa probable, se le impute al menor una de las siguientes faltas: asesinato, violación, robo, secuestro, mutilación, sodomía, escalamiento agravado y agresión agravada en su modalidad de delito grave. Deberá promoverla además, cuando se impute al menor una falta Clase II ó III y se le hubiere adjudicado previamente una falta Clase II ó III, incurrida entre los catorce (14) y dieciocho (18) años.

(b) *Vista.*—El Tribunal, previa notificación, celebrará una vista de renuncia de jurisdicción.

(c) *Factores a considerar.*—Para determinar la procedencia de la renuncia a que se refiere el inciso (a) de este artículo, el Tribunal examinará los siguientes factores:

(1) Naturaleza de la falta que se imputa al menor y las circunstancias que la rodearon.

(2) Historial legal previo del menor, si alguno.

(3) Historial social del menor.

(4) Si el historial socioemocional y sus actitudes hacia la autoridad hacen necesario establecer controles respecto a su comportamiento que no se le pueden ofrecer en los centros de custodia o en las instituciones de tratamiento social a disposición del Tribunal. 1986 Leyes de Puerto Rico 292–293.

Este Art. 15, *supra*, le otorga al Procurador la responsabilidad de solicitar la renuncia de jurisdicción en dos (2) modalidades. Primero, cuando un menor de catorce (14) a dieciocho (18) años cometa una Falta Clase II o Clase III.(2) En este caso la facultad del Procurador es discrecional. Por otro lado, el Procurador *vendrá obligado, previa determinación de causa probable*, a solicitar la renuncia de jurisdicción cuando se le impute al menor la comisión de las faltas de asesinato, robo, secuestro, mutilación, sodomía, escalamiento agravado y agresión agravada en su modalidad grave. También cuando el menor sea reincidente en la comisión de Faltas Clase II y Clase III.(3)

■ Los Arts. 3 y 15 de la Ley de Menores de Puerto Rico, 34 L.P.R.A. secs. 2203 y 2215, son los que regulan una etapa crítica del procedimiento en el cual se traslada a un menor de una jurisdicción cuyo fin es rehabilitador a otra que lo juzga como adulto con la probabilidad de la pérdida de la libertad por tiempo prolongado. Por la magnitud de ese traslado, por los efectos serios que puedan surgir y para cumplir con las garantías de un debido proceso de ley, el Art. 15 de la citada ley, *supra*, establece unos criterios que los tribunales tienen que considerar al evaluar una

---

(2) En el Art. 3 de la Ley de Menores de Puerto Rico, 34 L.P.R.A. sec. 2203, se define lo que son Faltas Clase II y Clase III. La Falta Clase II es aquella conducta tipificada como delito grave en la jurisdicción ordinaria y que no está clasificada como Falta Clase III. 34 L.P.R.A. sec. 2203(k). La Falta Clase III es aquella conducta tipificada en la jurisdicción ordinaria como los delitos graves siguientes: asesinato, homicidio, agresión agravada en su modalidad grave, violación, robo, distribución de sustancias controladas, incendio agravado, restricción ilegal de la libertad, secuestro, mutilación, incesto, sodomía, robo de menores, estragos, escalamiento y apropiación ilegal en su modalidad de hurto de vehículos. 34 L.P.R.A. sec. 2203(*l*).

El 19 de junio de 1987 la Asamblea Legislativa aprobó la Ley Núm. 34. Ésta provee para que en los casos que se impute al menor la comisión del delito de asesinato, o que participe en una transacción o evento que culmine en asesinato o en la comisión de un delito luego de haber sido juzgado por asesinato, se le prive al Tribunal de Menores de su jurisdicción y se juzgue al menor en el tribunal ordinario para adultos. 34 L.P.R.A. sec. 2204(a), (b) y (c). Dicha ley no estaba en vigor al momento de los hechos de este caso. Sin embargo, la doctrina que hoy establecemos será de aplicación a los casos donde se solicite la renuncia de jurisdicción en conformidad con la Ley Núm. 88 de 9 de julio de 1986 (34 L.P.R.A. sec. 2201 y ss.) por la comisión de las otras faltas expuestas.

(3) Esta parte del Art. 15 de la Ley de Menores de Puerto Rico, 34 L.P.R.A. sec. 2215, fue enmendada por la Ley Núm. 94 de 13 de julio de 1988 a los fines de eliminar el concepto de obligatoriedad.

solicitud de renuncia de jurisdicción. Este recurso nos permite examinar estos criterios y definir sus contornos a la luz de nuestra experiencia con la legislación anterior.

## III

Antes de la promulgación de esta ley, y bajo el estado de derecho anterior, existía una ambigüedad causada por la ausencia de criterios a considerarse para renunciar a la jurisdicción de menores. Informe del Comité de Justicia Juvenil de la Conferencia Judicial de 1980, pág. 95. El enfoque que se utilizaba era el del bienestar del menor o de la comunidad. *ELA en interés R.M.R.*, 83 D.P.R. 242 (1961); *Pueblo v. Figueroa González*, 95 D.P.R. 98 (1967). A la luz de la decisión del Tribunal Supremo de Estados Unidos en *Kent v. United States*, 383 U.S. 541 (1966), el panorama varió. Se estableció en ese caso que la renuncia de jurisdicción era una etapa crítica y que debían considerarse los factores siguientes al tomar la decisión:

1. La gravedad del alegado delito contra la comunidad y si la protección de la comunidad requiere una renuncia de jurisdicción.

2. Si el delito alegado se cometió de manera agresiva, violenta, premeditada o intencional.

3. Si el delito alegado se cometió contra personas o contra la propiedad; deberá atribuirse mayor gravedad a los delitos contra las personas, en especial si éstos provocan daños corporales.

4. Los méritos de la querella, es decir, si existe prueba suficiente a base de la cual sea probable que un Gran Jurado formule una acusación (lo cual se decidirá en consulta con el Procurador de los Estados Unidos).

5. La conveniencia de juicio y procesamiento del delito en un solo tribunal, cuando los cómplices del menor en la comisión del delito alegado sean adultos contra quienes se presentáran cargos en el Tribunal de Distrito de los Estados Unidos para el Distrito de Columbia.

6. El grado de sofisticación y madurez del menor, según se determine a base de la situación de su hogar, el ambiente en que se desenvuelve, su actitud emocional y sus patrones de vida.

7. El expediente y el historial previo del menor, incluso sus contactos anteriores con la División de Ayuda a Menores, con otras

agencias para el cumplimiento de la ley, tribunales de menores y otras jurisdicciones; períodos anteriores en probatoria ante este Tribunal, o estadías previas en instituciones para menores.

8. Las probabilidades de brindar protección adecuada al público y las posibilidades de lograr una rehabilitación razonable del menor (si se le halla culpable de haber cometido el delito alegado) por medio de procedimientos, servicios e instalaciones que estén actualmente a la disposición del Tribunal de Menores. (Traducción nuestra.) *Kent v. United States*, supra, págs. 566–568.

En un estudio realizado en las distintas jurisdicciones juveniles de Estados Unidos se encontró que los tribunales le daban especial consideración a la naturaleza de la falta y al historial social y emocional del menor. Se consideraba, entre otras cosas, el tipo de ofensa, la madurez y actitud emocional, la edad, las posibilidades de rehabilitación, el efecto de un encarcelamiento prolongado y la actitud de la comunidad con respecto al crimen. *The President's Commission on Law Enforcement and the Administration of Justice*, Task Force Report: Juvenile Delinquency and Youth Crime, Appendix B, Table 5, 1967, pág. 78, citado en S. Davis, *Rights of Juveniles*, 2da ed., Nueva York, Ed. Clark Boardman Co., Sec. 4.3, págs. 4–17. Véase Kalogerakis, *Legal Issues*, 5 Ann. Rev. Am. Psychiatric Assoc. 497 (1986).

Por otra parte, la jurisprudencia en Estados Unidos ha reflejado la utilización de rigurosos criterios en las renuncias de jurisdicción que fundamentalmente giran en torno a la seriedad de la falta (*Summers v. State*, 230 N.E.2d 320 (Ind. 1967)) y la capacidad del menor de distinguir entre el bien y el mal (*S.H. v. State*, 555 P.2d. 1050 (Okla. 1976)). De esa forma la gran mayoría de esas jurisdicciones han establecido guías claras y precisas para la renuncia de jurisdicción. Miller y Dawson: *The Juvenile Justice Process*, 2da ed., Nueva York, Ed. Foundation Press, 1976, pág. 333; B. Valliere, *The Transfer of Juvenile Offenders to Adult Courts in Massachusetts: Reevaluating the Rehabilitative Ideal*, 20 (Núm. 3) Suffolk U. L. Rev. 989 (1986); A. Johnson, *The Waiver*

*of Juvenile Court Jurisdiction*, 16 (Núm. 2) Akron L. Rev. 324 (1982); Davis, *op. cit.*, Sec. 4.1, págs. 4–5.[4]

En Puerto Rico exploramos por primera vez este problema en *Pueblo ex rel. M.G.G.*, 99 D.P.R. 925 (1971), y al amparo de la legislación anterior nos pronunciamos sobre la aplicabilidad de los factores de *Kent v. United States*, supra. Recientemente en *Pueblo ex rel. R.S.R.*, 121 D.P.R. 293 (1988), expresamos que al dilucidar una petición de renuncia de jurisdicción le corresponde al Estado presentar prueba sobre la naturaleza de la falta que se imputa al menor y las circunstancias que la rodean. Sin embargo, esta es la primera ocasión en que los errores expuestos en esta apelación nos permiten pronunciarnos sobre todos los factores enumerados en la nueva ley.

## IV

■ Para determinar la procedencia de una petición de renuncia de jurisdicción formulada por el Procurador, la ley requiere que mediante una resolución fundamentada examine cuatro (4) factores antes de encausarlo como adulto. 34 L.P.R.A. sec. 2215(c).

El primer elemento requiere que se considere la "[n]aturaleza de la falta que se imputa al menor y las circunstancias que la rodearon". 34 L.P.R.A. sec. 2215(c)(1). En este primer factor se debe considerar el tipo de delito cometido y la forma en que se cometió, además del grado de violencia utilizada, la peligrosidad del acto y el uso de armas de fuego. Hay que determinar: ¿Es este el tipo de falta que demuestra un ánimo perverso y maligno que caracteriza propiamente a un adulto? ¿Demuestra su conducta una indiferencia hacia la vida humana y hacia las normas básicas de convivencia social? También hay que considerar cuál fue el

---

[4] Por otro lado, en las jurisdicciones europeas, asiáticas y latinoamericanas, la legislación sobre tratamientos a jóvenes que delinquen se funda en tres (3) tipos de investigaciones: el tipo de delito, el historial familiar y las probabilidades reales de rehabilitación. Es importante señalar que en la gran mayoría de estas jurisdicciones se exige un informe detallado sobre la personalidad y el desarrollo físico y psicológico del joven, preparado por profesionales dedicados a esas materias. T. Sabater, *Los Delincuentes Jóvenes*, Barcelona, Ed. Hispano Europa, 1976, págs. 152–153.

grado de participación del menor en el acto delictivo y si la gravedad del acto presenta un riesgo para la comunidad.

■ En segundo lugar, se deben estudiar sus antecedentes legales para evaluar los tipos de faltas en las que ha incurrido anteriormente y los resultados de las medidas dispositivas impuestas por el tribunal. 34 L.P.R.A. sec. 2215(c)(2). Estudios sociológicos sobre la delincuencia juvenil revelan que la severidad y el número de incidentes de conducta antisocial son un buen indicador de la capacidad de los jóvenes para adaptarse a la sociedad una vez son adultos: "la conducta durante la niñez predice la conducta del adulto, mejor que cualquier otra variable". Kay, *Adolescent Conduct Disorders*, 5 Ann. Rev. Am. Psychiatric Assoc. 488. Su historial delictivo le permitirá al tribunal analizar si el menor presenta rasgos de delinquir frecuentemente, así como su capacidad para corregir su conducta a tenor con las medidas tomadas. El tribunal también debe considerar si el menor ha estado recluido en instituciones de servicios para menores y si ha evadido o incumplido los tratamientos requeridos.

■ Los últimos dos (2) factores que dispone el estatuto se refieren al historial social y socioemocional del menor. 34 L.P.R.A. sec. 2215(c)(3) y (c)(4). La intervención de los profesionales de la conducta humana (entiéndase trabajadores sociales, sicólogos y siquiatras, entre otros) es necesaria en esta etapa ya que es de ayuda al Tribunal de Menores en el examen de una serie de aspectos relacionados con la conducta, comportamiento social y controles externos e internos del menor. *La evaluación debe concluir si el menor tiene o no un potencial rehabilitador en las instituciones diseñadas para menores.*

■ Sobre el historial social corresponde examinar, como regla general, las relaciones familiares del menor y su comportamiento social. En particular debe estudiarse su núcleo familiar. Se debe identificar la composición familiar, con quién vive el menor y el tipo de controles que tiene en su hogar. Sobre este último aspecto es importante examinar si los padres o custodios presen-

tan los mismos problemas que el menor. Véase Kay, *supra*, págs. 484–486.

◼ En la interacción del menor con su ambiente familiar es aconsejable considerar aspectos tales como desempleo, alcoholismo, drogadicción, conflictos maritales, maltrato conyugal, enfermedades mentales o físicas, así como otros problemas familiares. Si tiene fuentes de ingreso propio es prudente explorar si se originan en actividades delictivas tales como la distribución de drogas. El examen de estos asuntos tiene el propósito de determinar si tales problemas han influenciado en la conducta del menor. Véase Merton, *Social Theory and Social Structure*, 1957.

◼ Sobre la conducta social del menor también procede un examen de su comportamiento escolar y funcionamiento académico, evaluando si hay problemas de ausentismo, indisciplina y falta de interés en sus estudios así como en sus relaciones con la comunidad y con las personas con quienes acostumbra confraternizar. Para completar el cuadro social es aconsejable inquirir sobre su capacidad para enfrentarse a situaciones adversas y si refleja un historial de agresividad y violencia en sus relaciones interpersonales que le permitan al tribunal determinar si es una persona rehabilitable dentro del sistema de justicia juvenil. Kay, *supra*, págs. 487–488.

◼ El factor relacionado al historial socioemocional del menor va dirigido a evaluar las actitudes del menor hacia la autoridad y los controles internos respecto a su comportamiento de manera que se pueda establecer si en su caso particular el sistema de rehabilitación disponible podría ayudarlo a corregir su comportamiento social. Informe de la Comisión de lo Jurídico del Senado de 22 de mayo de 1985, pág. 9. Davis, *op. cit.*, págs. 4–18. Para alcanzar este propósito se deben considerar unos indicadores de conducta sobre la peligrosidad del menor —consigo mismo y hacia otros— a la luz del acto cometido y de la probabilidad de que actos similares o de mayor peligro ocurran en el futuro. Entre otros, procede evaluar las reacciones del menor ante provocacio-

nes y el grado de impulsividad que caracteriza su conducta. Se debe investigar si tiene desórdenes emocionales o enfermedades orgánicas o si es adicto a alguna sustancia controlada.

Todos estos indicadores nos ayudan a determinar si el menor tiene suficientes controles internos como para enfrentarse y desempeñarse en una sociedad, así como para predecir las probabilidades de que responda a las medidas dispositivas del sistema juvenil. Véase Kay, *supra*, págs. 480–484.

La vista de renuncia de jurisdicción tiene como objetivo que el tribunal pueda considerar las posibilidades de rehabilitación del menor y si el interés de la sociedad se beneficia con el hecho de mantenerlo bajo su tutelaje. Véase *A.B.A. Standards Relating to Transfer Between Courts* Sec. 2.1B, pág. 30 (1980).

Los tribunales tienen que tener en cuenta en todo momento que la filosofía de nuestro ordenamiento es rehabilitar al menor por ser éste un miembro más del grupo de personas que requieren la protección y asistencia del Estado. Bajo el esquema de la ley, el tratamiento rehabilitador para un menor es la regla general y el juicio como adulto debe ser la excepción a ser utilizada cuando el tribunal entienda que no existen alternativas para tratar al aprehendido bajo su jurisdicción.

*Ninguno de los factores antes interpretados es determinante por sí solo y ninguno prevalece sobre los demás.* Corresponde, sin embargo, un análisis riguroso y fundamentado a base de una completa investigación que le permita a los tribunales resolver a la luz de la totalidad de las circunstancias de cada caso si el menor es rehabilitable y, por ende, acreedor a los servicios ofrecidos por el sistema de menores o si debe responder por sus actos ante los tribunales ordinarios. Para ello es necesario que la particular atención que reciba el menor se determine no sólo a base del acto cometido, sino de sus necesidades psíquicas, intelectuales y sociales. Informe del Comité de Justicia Juvenil de la Conferencia Judicial, *supra*, pág. 229.

# V

En el caso de autos la exposición narrativa de la prueba revela que en la vista de renuncia de jurisdicción se recibió abundante prueba pericial de psicólogos, siquiatras y trabajadoras sociales a los fines de que el tribunal tuviera un cuadro más abarcador sobre todos estos elementos.

En esa audiencia declararon los señores Eduardo López y Juan Ramón Pérez sobre los hechos alegadamente cometidos por el menor. Con relación al mismo asunto se recibió también el testimonio estipulado(5) de la Sra. Norma Tartak, madre del joven muerto.

Para establecer el historial social y socioemocional del menor declararon: el psicólogo clínico Antonio Rodríguez Posada; el Dr. Jaime Acevedo Maldonado, psiquiatra; la trabajadora social Marilyn Vargas López, que trabaja en el Hogar Juvenil de Humacao donde estuvo el menor aprehendido antes de la vista; las señoras Avelina Domingo y Rafaela Saldaña, trabajadoras sociales del tribunal; la Dra. Ana Luisa González Cabrera, psicóloga clínica del Departamento de Servicios contra la Adicción (DE.S.C.A.) y el Sr. Roberto L. Torres, técnico de esa agencia estatal.

El primer testigo fue el psicólogo clínico Antonio Rodríguez Posada, quien testificó que evaluó al peticionario y encontró que era una persona *de conducta antisocial, agresiva e irritable y que reaccionaba violentamente a las frustraciones*. También afirmó que aunque el menor conocía lo que había hecho, no le importaban las consecuencias de sus actos y presentaba rasgos de indiferencia y desprecio hacia el valor de la vida humana. Además, en el último año había usado distintos tipos de drogas. Finalmente, expresó *reservas con las posibilidades de su rehabilitación en las instituciones juveniles*. Véase E.N.P., págs. 3–13.

Por su parte, el Dr. Jaime Acevedo, perito en psiquiatría, también señaló que el menor tenía una conducta social muy

---

(5) Se estipuló únicamente para propósitos de la vista de renuncia a la jurisdicción.

agresiva con un patrón recurrente de abuso de drogas. A preguntas hechas en el contrainterrogatorio por el representante legal del menor, testificó que el menor tenía *pocos controles internos y no valoraba las consecuencias de sus actos*. Finalmente, concluyó que el menor se encontraba capacitado para distinguir entre el bien y el mal, por lo que recomendaba la renuncia de jurisdicción. Sobre el aspecto de la rehabilitación dijo que *"era cuesta arriba" ya que requería controles externos muy rígidos que no estaban disponibles en los hogares juveniles*. Véase E.N.P., págs. 13–22.

Concluido el testimonio del psiquiatra, se admitió una evaluación hecha por la psicóloga clínica Dra. Ana Luisa González Cabrera y el coordinador Sr. Roberto Luis Torres, profesionales adscritos al DE.S.C.A. En su testimonio, la doctora González ratificó que el menor era un adicto compulsivo (E.N.P., pág. 44) y que consumía marihuana desde los trece (13) años, a razón de cinco (5) o seis (6) cigarrillos diarios, y cocaína desde los quince (15) años, utilizando de una (1) a dos (2) bolsas diarias. La doctora informó que el menor confesó haber usado diversos tipos de sustancias controladas, tales como *crack*, valium, *artane*, heroína y *hashish*. Ambos testigos corroboraron que *el menor carecía de controles internos, que tenía un patrón de abuso de drogas y que sus posibilidades de rehabilitación en el sistema de hogares juveniles eran mínimas*. Véase E.N.P., págs. 43–48.

Por otro lado, las trabajadoras sociales del Tribunal Superior, Avelina Domingo y Rafaela Saldaña, confirmaron que el menor era agresivo y no tenía los controles necesarios para convivir en una comunidad. También reafirmaron que la adicción a drogas era determinante en su vida y que habían recibido información de haber visto al menor con personas vinculadas al bajo mundo consumiendo drogas en la escuela y tratando de introducirla para la venta en los planteles. Véase E.N.P., págs. 34–38.

Por último, el tribunal de instancia recibió unos informes sobre un electroencefalograma y una evaluación neurológica practicados al menor en los cuales se apreciaba que éste gozaba de buena salud física. A la luz de esta amplia prueba pericial, el

tribunal evaluó los factores pertinentes y mediante una resolución debidamente fundamentada renunció a su jurisdicción.

El magistrado de instancia elocuentemente formuló sus conclusiones sobre la naturaleza de la falta y la forma dramática en que ocurrieron los hechos delictivos. "Los hechos alegados en las querellas . . . señalan a la comisión por el menor de un acto agravado, atroz e impío, al disparar a otro ser humano con un arma de fuego desde corta distancia, de frente y de arriba hacia abajo, ocasionando la bala laceraciones múltiples en los órganos internos, lo que motivó la muerte. La prueba acusa también a otros actos, casi coetáneos con el asesinato, de premeditación y de despojo de propriedad mediante la intimidación armada, y a una escalofriante fuga en el vehículo así apropiado ilegalmente que fue, eventualmente, terminada por la valiente y peligrosa intervención de una de las víctimas del robo." Resolución de renuncia de jurisdicción, pág. 3.

Por otro lado, el tribunal a quo consideró que aunque R.H.M. no tenía antecedentes delictivos, su perfil social reflejaba un menor con graves problemas de disciplina en el hogar y en la escuela, una condición crónica de adicción a drogas y utilización de armas de fuego. De nuevo las palabras del ilustrado juez reflejan la magnitud del problema social del menor: "[E]l carácter y el comportamiento del menor se deterioraba en forma progresiva y los padres no lograron imponerle controles y disciplina; [es un] menor [que] retaba su autoridad, permanecía fuera del hogar en malas compañías y, en ocasiones, se desaparecía del hogar por varios días sin que los padres supieran d[ó]nde se encontraba." Resolución de renuncia de jurisdicción, pág. 4. La comunidad donde vive lo asociaba por sus compañías con personas vinculadas a la distribución de drogas. A partir de 1986 la conducta escolar se tornó esquiva y huraña, se ausentaba de la escuela y, finalmente, la abandonó. No empece tal abandono, fue observado en los predios escolares con armas de fuego y consumiendo masiva-

mente desde los trece (13) años sustancias controladas,(6) lo que le ha creado una dependencia compulsiva tanto física como sicológica. Como consecuencia, no tiene capacidad de análisis para comprender su problemática relacionada con las drogas. Íd.

Finalmente, el tribunal evaluó la condición socioemocional del menor considerando en particular sus actitudes hacia la autoridad y las posibilidades de rehabilitación y tratamiento individualizado en los centros o instituciones para menores. Sobre este factor el tribunal concluyó, luego de un ponderado análisis de la prueba ante sí, que el menor reflejaba una "conducta infra-socializada agresiva" con unos rasgos de "personalidad que presentan peligro para él y para la comunidad", así como una total incapacidad para adaptarse a la sociedad y convivir en una comunidad. Resolución de renuncia de jurisdicción, págs. 6–7. Los estudios realizados por las trabajadoras sociales y psicólogos demostraron una persona carente de los valores básicos de nuestra sociedad y "sin sentido de arrepentimiento por los actos cometidos". Íd.

Tomadas todas esas conclusiones de los factores que la Ley de Menores de Puerto Rico exige para la determinación de renuncia de jurisdicción, el tribunal acertadamente concluyó:

> Ante la gravedad y efectos de las faltas imputadas al menor, la estructura de su personalidad, el patrón de conducta antisocial manifestado por éste, la expectativa razonable de recurrencia de actos similares o parecidos a los imputados al menor, y el efecto acumulativo de los factores antes considerados, entendemos y resolvemos que se hace imperativo que sea el sistema de adultos el que entienda con el menor. No responde a los mejores intereses del menor ni de la comunidad el atender su caso bajo las disposiciones de la Ley de Menores. Dentro del contexto del sistema de menores no es posible brindarle para su propio bienestar, o el de la comunidad, o en conjunción para ambos, la supervisión, los controles necesarios y la exigencia de responsabilidad para dirigir sus actos y responder por ellos. Resolución de renuncia de jurisdicción, pág. 9.

---

(6) El testimonio de los peritos en corte reflejó que el apelante hacía uso excesivo de las siguientes sustancias controladas: marihuana, cocaína, *crack*, valium, *artane*, heroína, *hashish*. E.N.P., págs. 4, 11, 14, 17, 30, 35, 39 y 51.

█ Del examen de la exposición narrativa de la prueba concluimos que las determinaciones de hecho realizadas por el ilustrado foro de instancia están sostenidas por la prueba y, por lo tanto, merecen deferencia en ausencia de error manifiesto, prejuicio o parcialidad —*Pueblo ex rel. F.J.M.R.*, 111 D.P.R. 501 (1981)— y claro abuso de discreción. *ELA en interés R.M.R.*, supra, pág. 251. Las conclusiones antes mencionadas también satisfacen el criterio de la totalidad de las circunstancias que exigimos en *Pueblo ex rel. R.S.R.*, supra, y los que exponemos en el caso de autos.[7]

## VI

En su segundo señalamiento de un escrito bien fundamentado, el apelante nos insta a que le impongamos al Estado un *quantum* de prueba más riguroso para poder lograr una determinación judicial de renuncia de jurisdicción sobre un menor. Citando de *Kent v. United States*, supra, pág. 553, nos apunta que esta etapa adjudicativa es de importancia crítica ya que determinar derechos estatutarios es de vital importancia para el menor.

Con una analogía de *P.P.D. v. Admor. Gen. de Elecciones*, 111 D.P.R. 199, 223–227 (1981), el apelante sostiene que no se trata del caso civil típico en donde una mera preponderancia de la prueba es suficiente, sino que es un procedimiento de naturaleza intermedia en donde el Procurador deberá establecer su caso con prueba clara, robusta y convincente. Declinamos su invitación.

La Regla 4.4 de Procedimiento para Asuntos de Menores,[8] 34 L.P.R.A. Ap. I-A, es diáfanamente clara. Le impone al Procu-

---

[7] En términos generales, los estudios más recientes han concluido que los jueces del Tribunal de Menores están utilizando adecuadamente su discreción al renunciar a su jurisdicción y al sentenciar. Véase D. Neváres-Muñiz y M.E. Wolfgang, *Delincuencia juvenil en Puerto Rico: cohorte de personas nacidas en 1970*, Senado de Puerto Rico de 1988, pág. 274.

[8] La Regla 4.4 de Procedimiento para Asuntos de Menores dispone:
"Durante la vista, el Procurador presentará la prueba con que cuente en apoyo de su solicitud. El menor podrá rebatir la prueba y cuestionar el contenido de los documentos presentados en evidencia, así como interrogar a las personas que suscriban informes periciales.
"El tribunal resolverá a base de la preponderancia de la prueba." 34 L.P.R.A. Ap I-A.

rador la carga de la prueba para establecer la necesidad de la renuncia jurisdiccional y le concede al menor el derecho a rebatir y a cuestionar la evidencia ofrecida. Por último, la regla señala que "[e]l tribunal resolverá a base de la *preponderancia de la prueba*". (Énfasis suplido.) 34 L.P.R.A. Ap. I-A. Véanse, además: D. Neváres-Muñiz, *Derecho de Menores*, Hato Rey, Ed. Inst. Desarrollo del Derecho, págs. 28–29; M.L. Colón, *Comentario a las Reglas de Procedimientos para Asuntos de Menores*, 3 (Núm. 1) Forum 20 (1987).

El caso *Kent v. United States*, supra, pág. 562, no requiere un criterio de prueba más riguroso. Por el contrario, lo imprescindible es que el procedimiento cumpla con los requisitos esenciales del debido proceso de ley y el trato justo. Ya en *ELA en interés R.M.R.*, supra, págs. 242, 247–248, lo habíamos así reconocido.

▪ Aunque en *R.A.M. v. Tribunal Superior*, 102 D.P.R. 270, 273 (1974), resolvimos que es necesario probar más allá de duda razonable la comisión de una falta imputada a un menor, esta norma sólo es aplicable al procedimiento en su etapa estrictamente *adjudicativa.*

▪ Una vez se encuentra a un menor incurso en falta, "está sujeto, al igual que el adulto, al estigma resultante . . . de que ha violado un estatuto criminal, y asimismo está expuesto a la posibilidad de reclusión en una institución disciplinaria . . .". *R.A.M. v. Tribunal Superior*, supra, pág. 273. Por entender que era injusto exponer al menor a las consecuencias señaladas a base de un criterio de prueba menor al que sería suficiente para condenar a un adulto, en *R.A.M. v. Tribunal Superior*, supra, lo equiparamos, pero lo dicho allí no aplica al proceso de renuncia de jurisdicción.

La renuncia jurisdiccional no constituye una determinación de culpabilidad ni prejuzga la vista en su fondo por la falta imputada o el juicio criminal ordinario. Aunque el procedimiento es dispositivo, no es adjudicativo de unos hechos ni le imparte estigma negativo que afecte sus derechos a un juicio justo e imparcial. Véanse: *State v. Piche*, 442 P.2d 632, 635 (Wash. 1968); Davis, *op.*

*cit.*, Sec. 4.20(1). Abona a esta teoría el hecho de que el legislador dispuso como propósito y base de la Ley de Menores de Puerto Rico, que los procesos estatuidos bajo esta ley no se consideren de naturaleza criminal y sí como procedimientos civiles sui géneris. 34 L.P.R.A. sec. 2237; *ELA en interés R.M.R.*, supra; *Pueblo ex rel. J.L.D.R.*, 114 D.P.R. 497 (1983).

■ Por estas razones, resolvemos que el debido proceso de ley y el trato justo no requieren que se le imponga al Estado un criterio de prueba más riguroso para la determinación judicial de renuncia de jurisdicción.

## VII

El apelante nos apunta como tercer error que el tribunal de instancia erró al interpretar que su silencio o falta de expresión constituía una actitud de indiferencia o falta de arrepentimiento y que tal apreciación viola la prohibición constitucional a que se comente el silencio del acusado. Art. II, Sec. 11, Const. E.L.A., L.P.R.A., Tomo 1.

El apelante también argumenta que se le violó su derecho a no incriminarse y a estar asistido de abogado, cuando se le permitió al Procurador someter al menor a evaluaciones hechas por peritos en conducta humana contratados por el Estado sin previa notificación a su defensa y sin las debidas advertencias. Sus argumentos no nos convencen.

■ En primer lugar, los derechos constitucionales que puede reclamar un menor en un procedimiento bajo la Ley de Menores de Puerto Rico surgen de los principios del debido proceso de ley y trato justo. *Pueblo ex rel. J.L.D.R.*, supra, pág. 505; *ELA en interés R.M.R.*, supra, pág. 248; *R.A.M. v. Tribunal Superior*, supra, pág. 273.

Como parte del trato justo y el debido proceso de ley, a los menores se les ha reconocido la protección de la garantía constitucional contra la autoincriminación. *Pueblo v. Figueroa*

*González*, 95 D.P.R. 98 (1967); *Pueblo en interés menor J.A.B.C.*, 123 D.P.R. 551 (1989); *In re Gault*, 387 U.S. 1, 55 (1967).

El apelante cuestiona las conclusiones siguientes hechas por el juzgador y aduce que éstas son producto del comentario del silencio del menor y que las mismas son autoincriminatorias:

[1.]   A base de las apreciaciones y los testimonios de los psiquiatras, sicólogos, trabajador social y técnico de servicios sociales que han entrevistado o evaluado al menor, el Tribunal encuentra y concluye que en el menor existen algunas cualidades de personalidad que presentan peligro para él y para la comunidad.

.       .       .       .       .       .       .       .

[2.]   La capacidad de introspección del menor, eso es, la observación interna del yo y de sus actos, es pobre. No muestra sentido de culpa o de arrepentimiento o de remordimiento por sus actos. Sí le importa lo que le pueda ocurrir a él pero no le importa lo que le ocurrió a la otra persona. Resolución, *supra*, pág. 7.

■   Estas conclusiones son el producto de un análisis de la prueba presentada —en términos de la credibilidad que le dio el tribunal a los informes sociales y psiquiátricos que requerimos como parte del debido proceso de ley— en los casos de renuncia de jurisdicción. Esas evaluaciones psiquiátricas, sicológicas y de trabajo social son para poner al juzgador en posición de evaluar si el menor se mantiene o no bajo la jurisdicción del Tribunal de Menores.

Tales informes no representan una violación al derecho constitucional a no incriminarse debido a que éstos giran en torno a las actitudes, emociones y sensaciones de la personalidad del menor que no están directamente relacionadas con los hechos específicos por los cuales ha de ser juzgado. El propósito es elaborar un cuadro general para poner en posición al juzgador de declinar el ejercicio de su jurisdicción, conforme a los factores del Art. 15 de la Ley de Menores de Puerto Rico, *supra*, según antes interpretados.

■   Por otro lado, la Regla 4.4 de Procedimiento para Asuntos de Menores, *supra*, provee al menor el derecho a rebatir

y a cuestionar la prueba presentada por el Procurador en casos de renuncia de jurisdicción. A esos efectos, la representación legal del menor tuvo amplia oportunidad de contrainterrogar sobre el aspecto del arrepentimiento del menor, y así lo hizo al doctor Acevedo Maldonado. E.N.P., págs. 19–20. Finalmente, la Ley de Menores de Puerto Rico, en su Art. 37(d), 34 L.P.R.A. sec. 2237(d),(9) provee para que dentro del marco de confidencialidad —en beneficio del menor— se prepare un expediente separado al cual tendrá acceso la representación legal del menor antes de la vista.

Por las razones antes expresadas, *se dictará sentencia que confirma que la resolución del tribunal de instancia por la cual se renuncia a la jurisdicción sobre el menor apelante para que sea juzgado como adulto por la acusación de asesinato, robo y violación de los Arts. 6 y 8 de la Ley de Armas de Puerto Rico.*

El Juez Asociado Señor Rebollo López no intervino.

---

(9)   El Art. 37(d) de la Ley de Menores de Puerto Rico dispone:

"(d) *Confidencialidad del expediente.*—Los expedientes en los casos de menores se mantendrán en archivos separados de los de adultos y no estarán sujetos a inspección por el público, *excepto que estarán accesibles a inspección por la representación legal del menor previa identificación y en el lugar designado para ello.* Tanto los expedientes en poder de la Policía como aquéllos en poder del Procurador están sujetos a la misma confidencialidad. No se proveerán copias de documentos legales o sociales para ser sacadas fuera del Tribunal.

"No se suministrará información sobre el contenido de los expedientes excepto que, previa muestra de necesidad y permiso expreso del Tribunal, se conceda a funcionarios del Tribunal General de Justicia en sus gestiones oficiales, y aquellas personas de acreditada reputación profesional o científica que por escrito prueben su interés en obtener información para la realización de sus labores oficiales, estudios o trabajos, y siempre bajo las condiciones que el Juez estipule." (Énfasis suplido.) 34 L.P.R.A. sec. 2237(d).