*1069 TEXTO COMPLETO DE LA SETENCIA
El 3 de octubre de 2003, el Procurador General de Puerto Rico presentó-Petición de Certiorari en la que nos solicita la revocación de la Resolución emitida y notificada por el Tribunal de Primera Instancia, Sala Superior de San Juan, Asunto de Menores, el 6 de septiembre de 2002. Mediante dicha resolución, el tribunal a quo rehusó renunciar la jurisdicción del menor en el caso El Pueblo de Puerto Rico v. J.A.D.M., J99-953.
Por los fundamentos que expondremos a continuación, EXPEDIMOS el Auto de Certiorari solicitado y REVOCAMOS la Resolución recurrida.
I
El 25 de febrero de 2002, un agente del orden público presentó quejas contra el menor de 17 años, JADM, por las faltas de agresión agravada grave, tentativa de robo de vehículo de motor y el Artículo 4.05 de la Ley de Armas. El Tribunal de Primera Instancia determinó no causa probable para presentar querella.. Inconforme, el Procurador de Menores solicitó vista en alzada.
El 19 de junio de 2002, fueron presentadas nuevas quejas contra el menor por las faltas de secuestro, robo, escalamiento agravado, robo de vehículo de motor, y los Artículos 5.04 y 5.15 de la Ley de Armas. La vista de causa probable fue señalada para el 10 de julio de 2002.
El 26 de junio de 2002, en la vista de causa probable en .alzada, el tribunal encontró causa probable por las faltas de tentativa de robo de vehículos de motor y agresión -agravada grave y determinó -no causa por el Artículo 4.05 de la Ley de Armas.
El 8 de julio de 2002, el Procurador de Menores presentó moción en la que solicitó la renuncia de . la jurisdicción del Tribunal de Menores. El 10 de julio de 2002, el tribunal determinó causa probable por todas las quejas presentadas el 19 de junio de 2002. El 11 de julio de 2002, el Procurador de Menores, solicitó la consolidación de esas nuevas quejas con aquéllas por las cuales había solicitado la renuncia de jurisdicción.
Durante los días 19 y 28 de agosto de 2002, el Tribunal de Primera Instancia celebró la vista sobre renuncia de jurisdicción. La prueba presentada consistió en los testimonios de los perjudicados Héctor L. Peniston Moulier y Middoel Vázquez Colón, además, de los informes y testimonios de los peritos, el Dr. Rafael Cabrera, psiquiatra, y la Sra. Sylvia Cruz Serrano, trabajadora social. La defensa, por su parte, no presentó prueba a su favor.
Una vez escuchada la prueba presentada y examinado el expediente, el 6 de septiembre de 2002, el Tribunal de Primera Instancia emitió y notificó una Resolución en la que informó su determinación de no renunciar a la jurisdicción sobre el menor. Inconforme con dicha determinación, el Procurador General acudió ante nos mediante recurso de certiorari en el que solicitó la revocación de la resolución del Tribunal de Primera Instancia, Asunto de Menores, a quien le imputa la comisión del siguiente error:

“Erró el tribunal recurrido al abusar de su discreción y no renunciar a la jurisdicción del menor obviando que, en este caso, la prueba pericial no controvertida estableció que las condiciones sociales y legales del menor hacen la supervisión laxa del sistema de menores inadecuada para su rehabilitación y requieren los controles externos y estructurados del sistema de adultos. ”

II
El Artículo 15 de la Ley Número 88 de 9 de julio de 1986, mejor conocida como Ley de Menores de Puerto Rico, 34 L.P.R.A. Sección 2215, dispone lo siguiente:
*1070 “(a) Solicitud por Procurador. - El Tribunal, a solicitud del Procurador, podrá renunciar la jurisdicción sobre un menor que sea mayor de catorce (14) años y menor de dieciocho (18) años, a quien se le impute la comisión de cualquier falta Clase II o III. El Procurador deberá efectuar dicha solicitud mediante moción fundamentada cuando considere que entender en el caso bajo las disposiciones de esta Ley no responderá a los mejores intereses del menor y de la comunidad.

El Procurador podrá promover la solicitud, cuando, previa determinación de causa probable, se le impute al menor una de las siguientes faltas: violación, robo, secuestro, mutilación, sodomía, escalamiento agravado y agresión agravada en su modalidad de delito grave.

El Procurador deberá promover la solicitud de renuncia de jurisdicción en los siguientes casos:

(1) Cuando se impute a un menor que sea mayor de catorce (14) años la comisión de hechos constitutivos de asesinato en la modalidad que está bajo la autoridad del Tribunal.

(2) Cuando se impute al menor una falta Clase II o III y se le hubiera adjudicado previamente una falta Clase II o III, incurrida entre los catorce (14) y dieciocho (18) años.

El Procurador vendrá obligado a advertir al Tribunal la falta de jurisdicción cuando se trata de aquellos casos excluidos de su autoridad por disposición expresa de esta Ley.

(b) Vista. - El Tribunal, previa notificación, celebrará una vista de renuncia de jurisdicción.

(c) Factores a considerar. - Para determinar la procedencia de la renuncia a que se refiere el inciso (a) de este artículo, el Tribunal examinará los siguientes factores:

(1) Naturaleza de la falta que se imputa al menor y las circunstancias que la rodearon.

(2) Historial legal previo del menor, si alguno.

(3) Historial social del menor.

(4) Si el historial socioemocionál y sus actitudes hacia la autoridad hacen necesario establecer controles respecto a su comportamiento que no se le puedan ofrecer en los centros de custodia o en las instituciones de tratamiento social a disposición del tribunal (énfasis nuestro).”

Al considerar una petición de renuncia de jurisdicción, el inciso (c) del Artículo 15 de la Ley de Menores de Puerto Rico, supra, requiere examinar cuatro factores. El primer factor es la naturaleza de la falta imputada y las circunstancias que la rodearon. Para ello, el tribunal deberá considerar el tipo de delito cometido, la forma en que fue cometido, el grado de violencia utilizado, la peligrosidad del acto, el uso de armas de fuego, el grado de participación del menor, y si la gravedad del acto representa un riesgo para la comunidad. El tribunal deberá determinar si el tipo de falta demuestra un ánimo perverso y maligno característico de un adulto o si su conducta demuestra indiferencia hacia la vida humana y hacia las normas básicas de convivencia social, Pueblo en interés del menor R.H.M., 126 D.P.R. 404, 414-415 (1990).
El segundo factor a considerar son los antecedentes legales del menor. El tribunal deberá revisar los tipos de faltas incurridas anteriormente y el resultado de las medidas dispositivas impuestas, es decir, si el menor estuvo recluido en alguna institución para menores y si evadió o incumplió los tratamientos. Ello permite al tribunal determinar si el menor presenta rasgos de delinquir con frecuencia y la capacidad para corregir su conducta con las medidas dispositivas impuestas, Id. a la página 415.
*1071 El tercer factor es el historial social del menor. Lo que implica que el tribunal deberá examinar las relaciones familiares del menor, en particular, la composición del núcleo familiar, con quién vive, el tipo de controles que existen en el hogar y si los padres presentan los mismos problemas que el menor. También, es aconsejable considerar si existe desempleo, alcoholismo, drogadicción, conflictos maritales, maltrato conyugal y enfermedades mentales o físicas, entre otros. Todo ello, con el propósito de determinar si dichos problemas han tenido, influencia en la conducta del menor, Id. a las páginas 415-416.
Como parte de la conducta social del menor, procede investigar el comportamiento del menor en la escuela, su funcionamiento académico, si hay problemas de ausentismo, indisciplina, falta de interés en los estudios, sus relaciones con la comunidad y con las personas con las cuales usualmente confraterniza. Por último, para completar el cuadro social, es aconsejable evaluar la capacidad del menor para enfrentarse a situaciones adversas y si refleja un historial de agresividad o violencia en sus relaciones. De manera que el tribunal pueda determinar si el menor es capaz de rehabilitarse dentro del sistema de menores, Id. a la página 416.
El último factor a considerar son las actitudes hacia la autoridad y los controles internos. Esto, conlleva considerar unos indicadores de conducta sobre la peligrosidad del menor para consigo y hacia los demás a la luz del acto cometido y de la probabilidad que actos similares o de mayor peligro puedan volver a ocurrir en el futuro. Entre otros elementos, procede evaluar las reacciones del menor ante provocaciones, su grado de impulsividad, si tiene desórdenes emocionales, enfermedades orgánicas o si es adicto a alguna sustancia controlada, Id. a las páginas 416-417.
Todos estos criterios tienen el propósito de cumplir con las garantías del debido proceso de ley, ya que el efecto de la renuncia de jurisdicción es trasladar al menor de una jurisdicción cuyo fin es rehabilitador a una que lo juzgará como adulto y en donde con toda probabilidad, perderá su libertad por un tiempo prolongado. Por lo tanto, bajo el ordenamiento jurídico, la regla general es el tratamiento rehabilitador y la excepción es el juicio como adulto cuando no existan otras alternativas, Id. a la página 417.
Ningún factor es determinante por sí sólo, por lo cual, el tribunal deberá realizar un análisis riguroso y fundamentado a base de una investigación exhaustiva, que le permita determinar de acuerdo a la totalidad de las circunstancias del caso, si el menor puede ser rehabilitado por el sistema de menores o si deberá responder ante un tribunal ordinario como adulto. Al realizar dicho análisis, es necesario que el tribunal no sólo considere el acto cometido, sino las necesidades psíquicas, intelectuales y sociales del menor, Pueblo en interés del menor R.H.M., supra, a la página 417.
III
Una vez discutidos los factores a considerar, debemos analizar su aplicación al caso de autos a base de la. prueba presentada. Del expediente surge que las faltas imputadas a JADM son robo, agresión agravada grave, robo de vehículos de motor, secuestro, escalamiento agravado y los Artículos 5.04 y 5.15 de la Ley de Armas.
De los hechos alegados en las correspondientes quejas, encontramos que el menor golpeó varias veces con un bate a un caballero de 66 años en la cabeza y en la espalda, para despojarlo de su vehículo de motor. Así también, el menor, haciendo uso de un arma de fuego, detuvo a una persona frente a su residencia, hizo que lo montara en su auto y lo obligó a conducir a varios lugares, entre ellos, una máquina ATH para retirar dinero, el cual utilizó para comprar drogas en otro lugar. Las faltas alegadamente cometidas por el menor JADM pueden demostrar indiferencia hacia la vida humana y hacia las normas básicas de convivencia social.
En cuanto al historial legal previo del menor, el 25 de enero de 2000, cuando el menor tenía 14 años, fue encontrado incurso en robo de un vehículo de motor por hechos ocurridos el 20 de noviembre de 1999. En esa primera ocasión, el tribunal le concedió al menor libertad a prueba bajo la custodia de la madre durante 18 meses. Según el informe de la trabajadora social, Sra. Cruz Serrano, durante el proceso de evaluación del *1072 menor, ASSMCA diagnosticó que el menor tenía una dependencia a la marihuana, que era usuario de cigarrillos y alcohol y que había experimentado con Xanax. Por lo que en aquella ocasión, el tribunal realizó varias gestiones para ingresarlo en diferentes programas de rehabilitación de adicción a sustancias controladas. El 19 de abril de 2000, JADM ingresó al Hogar Crea de Guaynabo, pero abandonó el programa al día siguiente. El 18 de mayo de 2000, fue ingresado al Hogar Crea Quisquella, pero tomó la decisión de abandonar el programa a los dos días de estar allí. El 23 de junio de 2000, el menor ingresó a Teen Challenge, pero sólo permaneció 12 días porque no logró un ajuste al programa.
El 7 de agosto de 2000, a JADM le fue revocada la libertad a prueba y lo ubicaron en el Centro de Detención de Ponce hasta el 1 de septiembre de 2000, fecha en que fue trasladado al Centro de Tratamiento Social de Bayamón, Módulo II. El 14 de marzo de 2001, el Tribunal de Primera Instancia determinó cumplida la medida dispositiva y ordenó el cierre del caso. El 8 de octubre de 2001, cuando el menor tenía 16 años, fue encontrado incurso en apropiación ilegal por hechos ocurridos el 12 de septiembre de 2001. El tribunal le asignó libertad condicionada de un año bajo la custodia de su madre y la supervisión del tribunal.
De acuerdo a este historial de faltas cometidas previamente por el menor, éste presenta un patrón de delinquir frecuentemente. Las medidas dispositivas impuestas no tuvieron efecto rehabilitador alguno; de hecho, a tan sólo cinco meses de estar bajo la supervisión del tribunal, en libertad condicionada, el menor cometió las faltas objeto del presente recurso.
Con relación al historial social del menor, la trabajadora social explica en su informe que JADM es el tercero de cinco hijos procreados de la unión entre José Díaz Irizarry e Ileana Meléndez, quienes viven juntos desde hace 20 años. El padre tiene 42 años y trabaja en mantenimiento en una compañía privada. Este tuvo problemas de alcoholismo durante muchos años y de acuerdo a informes confidenciales, también estuvo relacionado con el uso de drogas. La madre tiene 36 años y trabaja en mantenimiento en un colegio privado. Uno de los hermanos mayores de JADM vive fuera del hogar de sus padres con su pareja consensual y el otro hermano de 18 años, está ubicado en la Escuela Industrial de Cabo Rojo por faltas relacionadas con robo, Ley de Armas y Ley de Tránsito. Los dos hermanos menores, Ileana de 14 años y Michael de 13, son estudiantes y viven en el hogar de sus padres. Previo a la detención del menor, éste convivía en el hogar de sus padres junto con su pareja consensual, Marisela, quien tiene cinco meses de embarazo. Marisela, de 16 años, continúa viviendo con los padres del menor.
La familia vive en el Residencial Público San Femando en Río Piedras, comunidad de alta incidencia en el uso de drogas y rodeada de otras comunidades con los mismos problemas. Los colaterales entrevistados describieron a los padres del menor y a JADM como buenas personas, que nunca han tenido problemas en el residencial.
Sobre el tipo de controles existentes en el hogar, la madre del menor indicó que ella siempre orientó a su hijo sobre la importancia de continuar en la escuela y de estar alejado de los problemas. El padre admitió haber disciplinado físicamente al menor en una o dos ocasiones por éste querer abandonar el hogar. De los informes presentados por la trabajadora social y el psiquiatra, surge que el menor usa sustancias controladas desde los 13 ó 14 años y que tiende a ser agresivo cuando está bajo el uso de dichas sustancias.
En cuanto al comportamiento del menor en la escuela, éste estudió hasta el sexto grado en la Escuela Ana Roque de Duprey en Monacillos, Río Piedras. Sus maestras lo describen como un buen estudiante en términos de aprovechamiento académico, pero que hablaba mucho. Del cuarto al quinto grado su actitud fue violenta, demasiado hiperactivo y explosivo. En el séptimo grado comenzaron sus problemas de absentismo y fue expulsado de varias escuelas hasta que eventualmente abandonó la misma. El octavo y noveno grado los terminó en la institución juvenil por medio de exámenes libres.
*1073 En lo que respecta al historial socioemocional del menor y su capacidad para lograr su rehabilitación dentro del sistema de menores, tanto la evaluadora social como el siquiatra, llegaron a la conclusión de que el comportamiento del menor es el de un joven adulto y que el tribunal debe renunciar a la jurisdicción, pues el menor tiene más probabilidad de rehabilitación bajo el sistema de adultos. La trabajadora social indicó que el ajuste del menor en la institución ha sido inadecuado, ha tenido una actitud negativa, hostil y molesto con el personal de custodia. La evaluación siquiátrica realizada por el doctor Cabrera refleja que el menor presenta un diagnóstico clínico de desorden de conducta, rasgos antisociales, ausencia de funcionamiento del supero ego y pobres mecanismos de empatia. No detectó condiciones patológicas y lo encontró en contacto con la realidad, afable y cooperador. También indicó que sus controles intemos son pobres y que no ha habido modificación de conducta durante el tiempo que ha estado bajo la supervisión del sistema de menores. El doctor Cabrera señaló que para una persona poder lograr su rehabilitación tiene que haber un compromiso y el menor hasta ahora no lo tiene. Por último, señaló que JADM no refleja el patrón de un joven menor de edad y por el contrario, es un adulto funcional.
Una vez evaluada toda la evidencia, podemos concluir que el menor JADM presenta poco o ningún interés .. en los estudios, tiene una dependencia a las sustancias controladas, no recibe la supervisión y el control necesario en su hogar, lleva una vida de adulto y no está sujeto a los controles de una familia.
IV
El Tribunal de Primera Instancia, luego de escuchar lo declarado por los peritos y examinar los informes rendidos, entendió que no era necesario renunciar a su jurisdicción sobre el menor. Sin embargo, tanto el psiquiatra como la trabajadora social concluyeron que el cuadro clínico de JADM no es compatible con el perfil de un joven que pueda ser beneficiado dentro del sistema juvenil. Un tribunal apelativo, en el ejercicio de su facultad revisora, tiene amplia discreción en la apreciación de la prueba pericial y está en iguales condiciones que el tribunal de instancia para adoptar su propio criterio, Agrón Pérez v. F.S.E., 142 D.P.R. 573, 579 (1997); Zambrana v. Hospital Santo Asilo de Damas, 109 D.P.R. 517, 522 (1980). Este joven amerita de unos servicios estructurados, dentro de un ambiente controlado y consistente, como los servicios que ofrece el sistema de adultos. No estamos ante un caso donde la persona dejaría de recibir ayuda con el fin de lograr su rehabilitación, de ser procesado como adulto, pues dentro del sistema de adultos, el joven puede recibir servicios continuos en el área de adicción y manejo de la violencia, puede desarrollar controles internos y participar en programas donde adquiera un mayor sentido de responsabilidad para que eventualmente, pueda lograr reintegro a la vida en comunidad.
Por consiguiente, concluimos que luego de llevar a cabo una evaluación detallada de los factores enumerados en el Artículo 15 de la Ley de Menores, supra, a base de la prueba pericial presentada, el Tribunal de Primera Instancia erró al no renunciar a la jurisdicción del Tribunal de Menores.
V
En virtud de los fundamentos anteriormente expuestos, EXPEDIMOS el Auto de Certiorari y REVOCAMOS la Resolución recurrida.
Lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau Secretaria General