EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| A.C.S. en representación y como madre con patria potestad de la menor ABC<br><br>V.<br><br>M.L.Q.T. en representación y como madre con patria potestad de la menor E.V.Q. | Certiorari<br><br>2025 TSPR 112<br><br>216 DPR ___ |

Número del Caso:  CC-2025-0749


Fecha:  4 de noviembre de 2025


Tribunal de Apelaciones:

    Panel Especial


Representantes legales de la parte peticionaria:

    Lcda. Ginny M. Andreu Rosado
    Lcdo. Jorge L. Marchand Heredia
    Lcdo. Jason González Delgado
    Lcdo. Carlos Pérez Toro


Materia:  Resolución del Tribunal con Voto particular disidente.


Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| A. C. S. en representación y como madre con patria potestad de la menor ABC<br><br>Recurrida<br><br>v.<br><br>M. L. Q. T. en representación y como madre con patria potestad de la menor EVQ<br><br>Peticionaria | CC-2025-0749 | *Certiorari* |
|---|---|---|

RESOLUCIÓN

En San Juan, Puerto Rico, a 4 de noviembre de 2025.

Examinada la *Urgente solicitud en auxilio de jurisdicción,* presentada por la peticionaria en representación y como madre con patria potestad de la menor EVQ, se provee no ha lugar.

En cuanto al recurso de *certiorari* presentado por la peticionaria en la misma fecha, se provee no ha lugar.

Lo acordó el Tribunal y lo certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Estrella Martínez emitió un Voto particular disidente, al cual se une el Juez Asociado señor Colón Pérez. La Jueza Presidenta Oronoz Rodríguez no intervino.


Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| A. C. S. en representación y como madre con patria potestad de la menor ABC<br><br>Recurrida<br><br>v.<br><br>M. L. Q. T. en representación y como madre con patria potestad de la menor EVQ<br><br>Peticionaria | CC-2025-0749 | Auxilio de jurisdicción; *Certiorari* |

Voto particular disidente emitido por el Juez Asociado Señor ESTRELLA MARTÍNEZ, a la cual se une el Juez Asociado señor COLÓN PÉREZ.

En San Juan, Puerto Rico, a 4 de noviembre de 2025.

La presente controversia requería que este Tribunal paralizara el alcance de una orden de protección emitida en virtud de la Ley Núm. 54 de 1989, *infra*, en contra de una menor de dieciséis (16) años que le ha prohibido asistir de manera presencial a su escuela durante este semestre académico. La adopción de este remedio drástico, con la posibilidad de consecuencias punitivas y sin evaluar alternativas menos restrictivas a partir de las particularidades de las partes involucradas, constituyó un remedio desproporcional y un error manifiesto que ameritaba el ejercicio de nuestra facultad revisora.

De esta forma, respetuosamente afirmo que en este caso procedía declarar ha lugar el auxilio de jurisdicción

y expedir el recurso *certiorari.* Como no puedo avalar esta denegatoria, **disiento.**

Expuesta la controversia, veamos, entonces, el trasfondo que la origina.

**I**

El 27 de octubre de 2025, MLQT, en representación y como persona con patria potestad de la menor EVQ (peticionaria), presentó ante este Tribunal una *Urgente solicitud en auxilio de jurisdicción*, la cual acompañó con una *Petición de auto de certiorari.* En su petición en auxilio de jurisdicción nos solicita que, en virtud de la Regla 28 del Reglamento del Tribunal Supremo, 4 LPRA Ap. XXI-B, se paralicen los efectos de una orden de protección emitida al amparo de la Ley Núm. 54 de 1989, *infra*, que se le impuso a su hija menor de edad, EVQ, a solicitud de ACS, en representación de la menor ABC (ACS o recurrida). EVQ y ABC comenzaron una relación de noviazgo meses antes de que ACS interpusiera la orden de protección objeto de controversia. Ambas menores cursan el undécimo grado en un colegio privado y presuntamente la relación se prolongó por cuatro (4) meses. La referida orden de protección tiene el alfanumérico OPA-2025-056868 y, como resultado, le impide a la menor EVQ asistir presencialmente a su escuela durante el presente semestre escolar.[1]

---

[1] La peticionaria sostiene que la menor EVQ estudia en ese colegio desde prekínder. Por el otro lado, la

En atención a la referida orden, surge del expediente que el 18 de junio de 2025 la Sala Municipal del Tribunal de Primera Instancia de San Juan expidió la referida orden de protección de manera *ex parte*, es decir, sin que la aquí peticionaria estuviese presente en la vista. Consta además en los documentos que, en la vista *ex parte*, declararon ACS y la menor ABC.

ACS alegó que hubo chantaje y abuso emocional, que ocasionó que su hija tuviese un cambio de actitud consistente en estar triste, deprimida y tornarse retante, que además requirió tratamiento psicológico, y que la menor EVQ obligó a su hija a expresarle su orientación sexual.[2]

La menor ABC, por su parte, declaró que en una ocasión presuntamente la menor EVQ la empujó en las escaleras de la escuela, pero en su mismo testimonio aclaró que fue "algo en broma"[3] y que no se cayó. Sin embargo, la Jueza del foro primario le preguntó a la menor ABC si en alguna ocasión la menor EVQ le faltó el respeto verbalmente, si le hizo algo que la hubiese incomodado durante la

---

recurrida ha indicado que la menor ABC cursa estudios en el colegio desde el décimo grado.

[2] ACS declaró que revisó el celular de su hija y encontró múltiples mensajes que a su entender demostraban el chantaje emocional.

[3] Íd., Apéndice 3, pág. 156.

relación, o si la amenazó con algo en particular y a todo ello respondió que no.[4]

Tras evaluar la prueba testifical y documental *ex parte*, se expidió la orden de protección y se consignó lo siguiente:

> A la vista ex parte comparece [ACS] y la menor ABC por derecho propio acompañadas por la intercesora legal [de la oficina de la Procuradora de la Mujer], Cristina Burgos. Las menores cursan el mismo grado escolar en el mismo colegio. Hace unos meses comenzaron una relación de noviazgo. EVQ ha maltratado emocionalmente a ABC. En los pasados meses EVQ ha presionado a ABC para que le manifestara a su madre su orientación sexual y la dejara saber sobre la relación que estas tenían. Además, cuando las menores han tenido discusiones, EVQ le ha manifestado a ABC que [atentaría contra su vida] si no pueden estar juntas.[5]

Posteriormente, el 27 de agosto de 2025, se realizó la vista en su fondo, en la cual se confirmó y extendió la orden de protección por un término de duración de tres (3) meses. En esta vista, declararon en extenso ambas menores. En la referida orden se consignó lo que sigue:

> Peticionaria sostuvo una relación de noviazgo con [ABC] por varios meses, comenzando desde el 15 de febrero de 2025. Se conocieron en el colegio donde ambas estudian. De la prueba desfilada surge que, durante la relación de noviazgo, peticionada aislaba a peticionaria de familiares y amistad. Peticionada no le permitía a peticionaria relacionarse con estos. Peticionaria le pidió a la peticionada que no dijera nada de la relación, pero peticionada se negaba y contaba a otros de la relación. Peticionada presiona a la peticionaria para que le manifieste a su madre su orientación sexual y su relación. Peticionada le cuestiona a la

---

[4] Íd., págs. 157-158.

[5] *Recurso de certiorari,* Apéndice 2, pág. 37.

peticionaria por un compañero de estudio de la clase de francés. En una ocasión, peticionada empujó a la peticionaria por las escaleras del colegio. Peticionaria intentó terminar la relación con la peticionada, pero peticionada le dijo que [atentaría contra la vida de ambas] si no podían estar juntas. Peticionada le ha proferido palabras hirientes a la peticionaria. Peticionaria se siente intimidada con la conducta de la peticionada. Peticionaria teme por su seguridad. Siendo así, se expide orden de protección final por el término de tres (3) meses.[6]

El 8 de septiembre de 2025, la peticionaria presentó una *Solicitud de nulidad de la orden de protección por falta de jurisdicción* ante el foro primario. En síntesis, arguyó que la referida orden era inoficiosa porque el foro primario carecía de jurisdicción sobre la materia para expedir una orden de protección al amparo de la Ley Núm. 54 de 1989, *infra*, y que, en su lugar, debió llevar a cabo los procedimientos conforme a la Ley Núm. 88 de 9 de julio de 1986, *Ley de menores de Puerto Rico*, 34 LPRA sec. 2201 *et seq.*

El 19 de septiembre de 2025, el Tribunal de Primera Instancia emitió una *Resolución* en la que declaró no ha lugar la solicitud, al resolver que el Art. 2.3 de la Ley Núm. 54 de 1989, *infra*, permite a los padres y madres de menores de edad solicitar remedios civiles a favor de sus hijos o hijas que han sido víctimas de violencia doméstica.

---

[6] Íd., Apéndice 3, pág. 184.

Tras varios incidentes procesales y luego de recurrir al foro intermedio, el Tribunal de Apelaciones dictó una *Sentencia* en la que confirmó la *Resolución* del foro primario. En consecuencia, no progresaron los planteamientos de falta jurisdicción y de la inexistencia de prueba testifical que acreditase hechos constitutivos de violencia doméstica o psicológica.

En su dictamen, el foro intermedio expresó que el Art. 2.3 de la Ley Núm. 54 de 1989, *infra*, permite que la falta de capacidad de un menor -por no haber cumplido los dieciocho (18) años- sea suplida por su padre o madre para solicitar los remedios civiles establecidos en la citada ley. En consecuencia, resolvió que las protecciones civiles les aplican a menores de dieciocho (18), sean estos agresores o víctimas.[7] En cuanto al alegado error en la prueba, el foro intermedio expresó que no se encontró abusó de discreción, prejuicio, parcialidad o error manifiesto que ameritara su intervención.

Inconforme, la peticionaria acude ante nos mediante un auxilio de jurisdicción y nos plantea en su recurso de *certiorari* que: (1) la Ley Núm. 54 de 1989, *infra*, y su procedimiento cuasi-penal es inaplicable a menores de dieciocho (18) años de edad por disposición expresa del estatuto, ya que las categorías de personas cobijadas incluyen cónyuges, excónyuges, personas que cohabitan o

---

[7] Íd., Apéndice 1, pág. 8.

han cohabitado, aquellas que sostienen una relación íntima, y quienes hayan procreado, categorías que presuponen un marco de relación sentimental entre personas adultas y no entre menores de edad; (2) existen dos (2) proyectos de ley recientes que procuraban extender los remedios bajo la Ley Núm. 54 de 1989, *supra*, a menores de edad en relaciones de noviazgo y ninguno prosperó (siendo estos el P. del S. 221 del 5 de marzo de 2021 y el P. del S. 156 de 2 de enero de 2025); (3) el Art. 2.3 de la Ley Núm. 54 de 1989, *infra*, que utilizaron tanto el Tribunal de Apelaciones como el foro primario para confirmar la orden de protección, se interpretó de manera fraccionada y no tiene el alcance de permitir que los padres o madres soliciten órdenes de protección en beneficio de sus hijos o hijas menores de dieciocho (18) años y en contra de otros menores; (4) la menor EVQ es una estudiante sobresaliente que no ha podido asistir este semestre a su escuela, lo que incide en su derecho fundamental a la educación;[8] (5) la Sala Municipal debió abstenerse de ver

---

[8] En su solicitud en auxilio de jurisdicción la peticionaria manifestó: "EVQ es una estudiante de alto rendimiento académico…, EVQ participa en competencias académicas, entre ellas Modelo Naciones Unidas (donde ha recibido premios y menciones), *Metropolitan Science Fair* (ganadora primer lugar año 2025 en Física e Ingeniería) y *World Robotics Olympiad* (ganadora en Puerto Rico y premio especial en representación de Puerto Rico en Panamá octubre de 2025). Su trayectoria académica, su conducta intachable y el aval de la institución educativa para recibirla nuevamente demuestran que no encaja en el perfil de una persona agresora". *Urgente solicitud en auxilio de*

el caso y referir el asunto al Tribunal de Menores conforme a la Ley Núm. 57-2023, *Ley para la prevención del maltrato, preservación de la unidad familiar y para la seguridad, bienestar y protección de los menores* y la Ley Núm. 88 de 1986, *Ley de menores de Puerto Rico*, por lo que, a su entender, actuó sin jurisdicción, violó el debido proceso de ley y la igual protección de las leyes; (6) la orden de protección no se fundamentó en prueba testifical que acreditara un patrón de violencia doméstica como lo exige la Ley Núm. 54-1989, *infra*, sino que la solicitud respondió al conflicto intrafamiliar entre ACS y su hija ABC por la primera oponerse a que su hija mantuviera una relación afectiva con una persona de su mismo sexo y orientación sexual; y (7) la exclusión social de EVQ del entorno escolar y la compañía de sus pares le ha provocado serias consecuencias adversas para su salud mental y emocional.[9] Por todo ello, solicita que expidamos el auto de *certiorari* y determinemos que la mencionada orden de protección es inoficiosa y nula.

Establecido lo anterior, procedo a exponer brevemente el derecho aplicable.

**II**

**A.**

---

*jurisdicción,* págs. 9-10. La moción en auxilio está acompañada con múltiples certificados y reconocimientos otorgados a la menor EVQ.

[9] Véase, *Petición de auto de certiorari.*

Como es sabido, la Regla 28 del Reglamento de este Tribunal regula las peticiones de auxilio de jurisdicción que se insten ante este foro. En lo pertinente, dispone:

> (a) El Tribunal podrá expedir una orden provisional en auxilio de jurisdicción cuando sea necesario hacer efectiva su jurisdicción en un asunto pendiente ante su consideración.
>
> A los fines de esta regla, se entenderá que el Tribunal atenderá, sin sujeción al trámite ordinario, cualquier asunto relacionado con el recurso presentado o pendiente para **evitar alguna consecuencia** adversa que afecte su jurisdicción **o que pueda causar un daño sustancial a una parte mientras resuelve el recurso**. (Negrillas suplidas). Regla 28 del Reglamento del Tribunal Supremo, 4 LPRA Ap. XXI-B.

Según hemos expresado, un remedio en auxilio de nuestra jurisdicción es excepcional para casos donde existen situaciones de "verdadera emergencia". *García López y otros v. E.L.A.*, 185 DPR 371, 377-378 (2012) (citando a *Marrero v. Dolz,* 142 DPR 72, 73 (1996)). Cuando se soliciten medidas de paralización debemos considerar que: (1) **el peticionario presente un caso fuerte de probabilidad de prevalecer en los méritos;** (2) **demuestre que sin la paralización sufrirá un daño irreparable;** (3) **no se causará daño sustancial a las demás partes interesadas,** y (4) la suspensión no perjudicará el interés público. *Pantoja Oquendo v. Mun. de San Juan*, 182 DPR 101, 109 (2011); *Plaza Las Américas v. N & H,* 166 DPR 631, 642-643 (2005).

**B.**

La Ley Núm. 54 de 15 de agosto de 1989, conocida como la *Ley para la Prevención e Intervención con la Violencia Doméstica*, 8 LPRA sec. 601 *et seq.,* se aprobó para atender la situación de violencia doméstica como uno de los problemas más graves y complejos que confronta nuestra sociedad. Exposición de Motivos, Ley Núm. 54 de 1989. La violencia doméstica lacera la integridad y dignidad de toda víctima, independientemente del sexo, estado civil, orientación sexual, identidad de género o estatus migratorio de cualquiera de las personas involucradas en la relación. Art. 1.2, 8 LPRA sec. 601.

A los fines de cumplir con esta política pública, la Ley Núm. 54 de 1989, *supra*, establece diversas medidas de manera integrada para agilizar los procesos de intervención con las víctimas. *Pueblo v. Ayala García*, 186 DPR 196, 207-208 (2012). De esta forma, el estatuto dispone la expedición de órdenes de protección contra la persona agresora, tipifica los delitos que constituyen actos de violencia contra la pareja, permite el arresto inmediato de la parte agresora sin necesidad de una orden de arresto y obliga a la policía a brindar ayuda a las víctimas, entre otras medidas. Íd.

Con el fin de proteger a quien sea víctima, el referido estatuto le otorga a cualquier juez o jueza, municipal o de primera instancia, la facultad para dictar medidas afirmativas de protección a través de la

expedición de una orden de protección o de acecho, dirigidas a la persona agresora para que se abstenga de incurrir en determinada conducta. Arts. 2.1 y 2.2, 8 LPRA secs. 621-622.

La Ley Núm. 54 de 1989, *supra*, define la violencia doméstica como

> el empleo de fuerza física o violencia psicológica, intimidación o persecución o violencia económica contra una persona por parte de su cónyuge, ex cónyuge, una persona con quien cohabita o haya cohabitado, con quien sostiene o haya sostenido una relación consensual o una persona con quien se haya procreado una hija o un hijo, independientemente del sexo, estado civil, orientación sexual, identidad de género o estatus migratorio de cualquiera de las personas involucradas en la relación, para causarle daño físico a su persona, sus bienes o a la persona de otro o para causarle grave daño emocional. Art. 1.3, 8 LPRA sec. 602(v).

Además, también define la violencia psicológica como aquella

> conducta ejercitada en deshonra, descrédito o menosprecio al valor personal, limitación irrazonable al acceso y manejo de los bienes comunes, chantaje, vigilancia constante, aislamiento, privación de acceso a alimentación o descanso adecuado, amenazas de privar de la custodia de los hijos o hijas, o destrucción de objetos apreciados por la persona, excepto aquellos que pertenecen privativamente al ofensor. Íd., inciso (x).

Por otro lado, la citada ley define la intimidación como toda acción o palabra que manifestada en forma recurrente tenga el efecto de ejercer una presión moral sobre el ánimo de una persona, la que, por temor a sufrir algún daño físico o emocional en su persona, sus bienes o

en la persona de otro, es obligada a llevar a cabo un acto contrario a su voluntad. Art. 1.3, *supra*, inciso (k).

En relación al grave daño emocional, el estatuto establece que significa y surge cuando, como resultado de la violencia doméstica, se pueda evidenciar que la persona manifiesta, de forma recurrente, una o varias de las características siguientes: (1) miedo paralizador; (2) sentimientos de desamparo o desesperanza; (3) sentimientos de frustración y fracaso; (4) sentimientos de inseguridad, desvalidez, aislamiento, autoestima debilitada; (5) u otra conducta similar, cuando sea producto de actos u omisiones reiteradas. Art. 1.3, *supra*, inciso (i).

Por otra parte, la Ley Núm. 26-2018 enmendó el Art. 2.3 de la Ley Núm. 54 de 1989, *supra*, a los efectos de "reconocerles capacidad jurídica a las personas de dieciocho (18) años o más de edad para solicitar órdenes de protección sin la intervención de sus padres con patria potestad o tutores". Exposición de Motivos, Ley Núm. 26-2018. Se consignó que uno de los problemas que enfrentan los jóvenes -de entre dieciocho (18) a veintiún (21) años en relaciones de noviazgo- es que la mayoría de edad es a los veintiún (21) años y, que, por esto, no pueden solicitar por sí mismos órdenes de protección. Lo anterior debido a que carecen de capacidad jurídica para ello, ni pueden solicitar que se sometan cargos criminales contra la persona que comete los actos de violencia. Por esta razón se consideró necesario

enmendar ciertas disposiciones, como los Arts. 2.1 y 2.3, para reconocerles capacidad legal a los jóvenes de dieciocho (18) años o más de solicitar órdenes de protección al amparo de la Ley Núm. 54 de 1989, *supra*.[10]

Finalmente, en cuanto a la revisión de las órdenes de protección, el Art. 2.2 dispone que podrán ser revisadas de dos maneras: (1) en casos apropiados, ante cualquier sala de superior jerarquía, y (2) en aquellas instancias pertinentes, en las Salas de Relaciones de Familia. Art. 2.2, 8 LPRA sec. 622.

**III**

El denegar de plano tanto la solicitud de auxilio de jurisdicción, como la expedición del recurso de *certiorari*, y con esto permitir que se confirme una orden de protección en virtud de la Ley Núm. 54 de 1989, *supra*, en contra de una menor de tan solo dieciséis (16) años, constituye un rechazo a nuestro ordenamiento, el cual ha reconocido y diseñado un tratamiento jurídico especial a los menores de edad.

Debemos tener presente que la Ley Núm. 54 de 1989, *supra*, si bien dispone en su Capítulo II para solicitar remedios civiles, **es a su vez un estatuto mayormente de**

---

[10] El referido Art. 2.3 se enmendó anteriormente mediante la Ley Núm. 538-2004 para establecer un procedimiento que permite a los patronos solicitar una orden de protección a favor de sus empleados, visitantes o cualquier otra persona que se encuentre en su lugar de trabajo.

**carácter penal que tipifica las conductas de violencia doméstica constitutivas de delitos, cuya violación trae consigo consecuencias de naturaleza punitiva**. Es decir, en este caso la menor EVQ está expuesta a responder por las consecuencias penales que conlleva infringir la referida orden de protección sin que, a mi juicio, se le hayan otorgado todas las garantías procesales mínimas para ello y sin que el estatuto tenga el alcance que le atribuyeron los foros recurridos. Me explico.

A.

En primer lugar, surge del expediente que a la menor EVQ se le apercibió, tanto de manera verbal en la vista en su fondo de la orden de protección como de forma escrita, que, de incumplir la mencionada orden, incurriría en "delito grave de tercer grado".[11] Además, se le advirtió que podría ser procesada por desacato al tribunal, lo que podría resultar en pena de multa o cárcel o ambas penas a discreción del tribunal".[12]

Adviértase que, precisamente, el Art. 2.8 de la Ley Núm. 54 de 1989, 8 LPRA sec. 628, dispone que, ante el

---

[11] Según el Art. 307 – *Cláusula de transición para la fijación de penas en leyes especiales* del Código Penal de Puerto Rico, 33 LPRA sec. 5415, un delito grave de tercer grado "conllevará una pena de reclusión, restricción terapéutica, restricción domiciliaria, servicios comunitarios, o combinación de estas penas, por un término fijo de ocho (8) años".

[12] *Recurso de certiorari,* Apéndice 2, pág. 45; Apéndice 3, págs. 310-311 y 313.

incumplimiento de una orden de protección, los tribunales estarán obligados a imponer supervisión electrónica, de concederse una sentencia suspendida. Del mismo modo, todo agente del orden público debería efectuar un arresto si tiene motivos fundados para creer que se violó las disposiciones de la orden. Íd. Sostengo que la sola amenaza y el apercibimiento de estas consecuencias penales a la menor EVQ es patentemente incompatible con el debido proceso de ley, el cual reconoce a todo menor de edad como una figura jurídica que requiere un tratamiento especial.

Nos comenta la Profesora y Dra. Dora Nevárez-Muñiz que el Tribunal Supremo de los Estados Unidos reconoce que los menores de dieciocho (18) años poseen una imputabilidad disminuida, por motivo de su inexperiencia, inmadurez, impulsividad, menor educación y la propensión a ser influenciados por sus pares. *D. Nevárez-Muñiz, Derecho de menores: delincuente juvenil y menor maltratado*, 8va Ed., Instituto para el desarrollo del derecho, San Juan, 2024, pág.11, citando a *Miller v. Alabama*, 567 US 460 (2012); *Graham v. Florida*, 560 US 48 (2010); *Ropper v. Simmons*, 543 US 551 (2005). Para la Dra. Nevárez, estas características propias de la minoridad hacen que los menores sean menos capaces que un adulto de evaluar las consecuencias de su conducta y, por ello, subraya la importancia de las medidas dirigidas a su rehabilitación y a que no se les exija responsabilidad

penal como si fueran adultos. Íd. Véase *Pueblo v. Álvarez Chevalier*, 199 DPR 735 (2018) (Voto particular disidente emitido por el Juez Asociado señor Estrella Martínez).

En nuestro ordenamiento, es precisamente la Ley Núm. 88 de 1986, *Ley de Menores de Puerto Rico, supra*, la que reglamenta los procedimientos investigativos, judiciales y ejecutivos en los casos de menores que incurren en conductas constitutivas de delito, según lo tipificado en el Código Penal o en las leyes especiales. *Pueblo en interés menores C.L.R. y A.V.L.,* 178 DPR 315, 323 (2010). Como toda ley especial, sus disposiciones aplicarán con preferencia sobre otras leyes y, en caso de conflicto, prevalecerán los principios especiales que ésta enmarca. Íd. Lo material en este proceso es que se trata de uno especial en el cual el menor transgresor tiene derecho a recibir tratamiento individualizado que propenda a sus necesidades y eventual rehabilitación. Íd. (citas omitidas).[13] En ese sentido, es un principio establecido

---

[13] Como sabemos, en los asuntos de menores estos no cometen delitos, sino faltas; no hay tal cosa como juicio en su fondo, sino vista adjudicativa; no hay una sentencia, sino una medida dispositiva; el menor no puede ser detenido o recluido en una institución para adultos; los asuntos son confidenciales; el historial del menor ante el tribunal no constituirá impedimento para cualquier solicitud y obtención de empleo, puesto o cargo en el servicio público; no aplican las Reglas de Procedimiento Criminal, sino las *Reglas de Procedimiento para Asuntos de Menores*, 34 LPRA Ap. I-A; entre otras garantías procesales. Véanse, *Pueblo en interés menores C.L.R. y A.V.L., supra; Pueblo ex rel. J.L.D.R.,* 114 DPR 497 (1983*); Pueblo ex rel. L.V.C.,* 110 DPR 114 (1980).

que estos procesos son de naturaleza *sui géneris* y no criminal, aun cuando atienden conducta constitutiva de delito según definida por las leyes penales. *Pueblo en interés de la menor S.M.R.R.,* 185 DPR 417, 422 (2012).

En segundo lugar, si bien mediante la Ley Núm. 11-2020, *supra,* se enmendó la Ley Núm. 54 de 1989, *supra,* para otorgarle capacidad jurídica a los padres, madres, y los hijos o hijas mayores de edad a solicitar una orden de protección a favor de sus hijos o hijas y madres o padres que son o han sido víctimas de violencia doméstica o de conducta constitutiva de delito según tipificado en el estatuto, en ninguna parte del estatuto se consignó expresamente que la solicitud de la orden de protección puede ser en contra de un menor de edad, o como en este caso, contra una menor de dieciséis (16) años. Véase, Art. 2.3, 8 LPRA sec. 623.[14]

---

[14] El Art. 2.3 dispone: Cualquier persona mayor de edad, de dieciocho (18) años o más de edad, podrá solicitar los remedios civiles que establece este Artículo para sí, o a favor de cualquiera otra persona cuando ésta sufra de incapacidad física o mental, en caso de emergencia o cuando la persona se encuentre impedida de solicitarla por sí misma.

También podrán solicitar los remedios civiles que establece este Artículo, los padres, madres y los hijos o hijas mayores de edad, a favor de sus hijos o hijas y madres o padres que son o han sido víctimas de violencia doméstica o de conducta constitutiva de delito según tipificado en esta Ley. En estos casos, los padres, madres y los hijos o las hijas mayores de edad, deberán haber presenciado los actos de violencia doméstica; o que la víctima haya confiado o revelado a éstos que ha sido víctima de actos constitutivos de violencia doméstica. Dicha solicitud deberá ser bajo juramento y deberá incluir

Es más, de la Exposición de Motivos de la referida Ley Núm. 11-2020, *supra*, se desprende que a la Asamblea Legislativa le preocupó el alto número de asesinatos de mujeres por sus parejas, en muchos casos frente a sus propios hijos e hijas; y se reconoció que, en ocasiones, la víctima sufre temor a que le hagan daño a ella o a sus hijos, lo que limita su capacidad de acudir y solicitar una orden de protección. Ante este cuadro fue que la Asamblea Legislativa entendió que era necesario reconocerle a los familiares cercanos a la víctima el poder de solicitar una orden de protección a su familiar que es víctima de violencia doméstica.

A esto se añade que la Ley Núm. 54 de 1989, *supra*, define una relación de pareja como una relación entre cónyuges, excónyuges, personas que cohabitan o han cohabitado, las que sostienen o han sostenido una relación consensual y quienes han procreado entre sí un hijo o una hija, independientemente del sexo, estado civil, orientación sexual, o identidad de género. Art. 1.3, *supra*, inciso (q). Nada de ello pareciera sugerir que su protección se extiende a relaciones de noviazgo entre dos (2) adolescentes menores de dieciocho (18) años.

---

que el solicitante informó a la víctima, previo al comienzo del proceso de solicitud, de su intención de solicitar la orden de protección a su favor. Art. 2.3, *supra*.

Precisamente, conviene reseñar que, tal como nos plantea la peticionaria, han existido dos (2) proyectos de ley recientes para extender el alcance de la Ley Núm. 54 de 1989, *supra*, a las relaciones afectivas entre adolescentes menores de dieciocho (18) años. Por ejemplo, el P. del S. 221 del 5 de marzo de 2021 procuraba incluir en la definición de relación de pareja aquellas relaciones de noviazgo en donde no se hayan sostenido relaciones sexuales.[15] **El mencionado proyecto proponía, además, enmendar el Art. 1.5 para disponer que si el transgresor era un menor de edad podría ser procesado al amparo de la *Ley de Menores de Puerto Rico*, *supra*, para que se le aplicara la falta correspondiente.** Incluso, el proyecto proponía facultar a menores de edad entre doce (12) a diecisiete (17) años a solicitar una orden de protección y sugería enmendar los formularios de solicitud de órdenes de protección a esos fines.

Similarmente, mediante el P. del S. 156 de 2 de enero de 2025 se propuso una enmienda muy parecida a la Ley Núm. 54 de 1989, *supra*, respecto a la protección de las relaciones de noviazgo entre adolescentes, pero clarificando que las relaciones que se protegerían de los

---

[15] Tras referirse el proyecto a la *Comisión de Asuntos de la Mujer*, realizarse una vista pública, recibirse el primer informe de la Comisión con recomendación positiva y estar en el calendario de órdenes especiales del Senado, el proyecto se retiró por su autora el 4 de octubre de 2021. Véase, Sistema Unico de Trámite Legislativo, SUTRA.

adolescentes serían aquellos menores de dieciocho (18) años, pero siempre que ambos fuesen mayores de los doce (12) años.[16]

Aunque el retiro y el rechazo de estos proyectos responde a un acto enteramente discrecional de la Asamblea Legislativa, debemos tener presente que la Ley Núm. 54 de 1989, *supra*, actualmente no está diseñada ni tiene el alcance de que sus disposiciones con remedios civiles y penales apliquen en contra de menores de dieciocho (18) años en relaciones de noviazgo. Recordemos que las disposiciones de una ley no deben ser interpretadas de forma aislada, sino analizadas en conjunto, tomando en consideración todo su contexto de manera integral. Por ello, debemos rechazar una interpretación literal de un texto legal que conduzca a un resultado que no puede haber sido el que quería lograr el legislador. *CBS Outdoor v. Billboard One, Inc. et al.,* 179 DPR 391, 417 (2010).

Es decir, indistintamente de que sea adecuada o no la eventual aprobación de una medida de esta naturaleza y alcance, las normas de hermenéutica requieren reconocer que no debemos aplicar estos mecanismos con posibles repercusiones penales a la menor EVQ bajo los hechos particulares de este caso. No menos importante, aun cuando

---

[16] Tras referirse el proyecto a la *Comisión de lo Jurídico* y la *Comisión de innovación, reforma y nombramientos*, se derrotó a viva voz en el Senado de Puerto Rico. Véase, Sistema Unico de Trámite Legislativo, SUTRA.

para fines argumentativos le aplicase el referido estatuto, este Tribunal, como mínimo, debió examinar si existe prueba suficiente para emitir la orden de protección recurrida.

Ahora bien, con esto no quiero decir que las puertas del Tribunal están cerradas para procurar otros mecanismos dentro del sistema judicial que atiendan efectivamente las circunstancias particulares, tomando en consideración la identidad de las partes, entiéndase dos (2) menores de edad, con todas las salvaguardas procesales y sustantivas que nuestro ordenamiento les reconoce, garantizando la concesión del remedio más justo y que procure el interés legítimo y apremiante en la búsqueda del mejor bienestar de las menores.[17]

C.

Aun suponiendo la validez de la orden de protección, como sostiene implícitamente hoy una mayoría de este Tribunal con la denegatoria del recurso, soy del criterio de que, en términos probatorios, la presente controversia ameritaba un estudio cuidadoso de todos los documentos que obran en autos previo a denegar de plano la expedición del

---

[17] Véase, el Art. 67 de la Ley Núm. 57-2023, *Ley para la Prevención del Maltrato, Preservación de la Unidad Familiar y para la Seguridad, Bienestar y Protección de los Menores*, supra; Ley Núm. 88 de 1986, *Ley de Menores de Puerto Rico*, supra; Ley Núm. 85 de 2017, *Ley Contra el Hostigamiento e Intimidación o 'Bullying' del Gobierno de Puerto Rico*, 18 LPRA sec. 3961 et seq., y la exigencia de un *Protocolo Institucional para el Manejo del Acoso Escolar*. Véase, 18 LPRA sec. 3961e.

auto de *certiorari*. Solo así se hubiese podido evaluar si los foros recurridos incurrieron en prejuicio, parcialidad o error manifiesto en la apreciación de la prueba. Véanse, *Ortiz Ortiz v. Medtronic*, 209 DPR 759 (2022); *Santiago Ortiz v. Real Legacy Assurance Company*, Inc., 206 DPR 194, 219, (2021); *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 782 (2013); *C. Brewer PR, Inc. v. Rodríguez*, 100 DPR 826, 830 (1972).

Si bien la revisión de la orden *ex parte* no fue acogida en su momento por una de las Salas de Verano[18] de este Tribunal, conviene recordar que uno de los requisitos para que se conceda una orden de protección *ex parte* es si se determina que la parte solicitante "demuestra que existe una probabilidad sustancial de riesgo inmediato de maltrato". Art. 2.5, 8 LPRA sec. 625(c).

De entrada, de una revisión de los documentos de autos surge duda en cuanto al riesgo inmediato existente que dio base a la acción en virtud de la Ley Núm. 54 de 1989, *supra*. Ello puesto que al momento de solicitarse la

---

[18] Cabe señalar que, en aquella ocasión, todavía no se había celebrado la vista en su fondo de la orden de protección. En ese sentido, la peticionaria acudió ante nos con el propósito de que ordenásemos la celebración de la referida vista lo antes posible, toda vez que habían pasado más de veinte (20) días desde la vista *ex parte*. En la alternativa, nos solicitó se modificara la orden de protección expedida de manera *ex parte*, a los efectos de permitir que la menor EVQ pudiese asistir a la escuela hasta que se llevara a cabo la vista en su fondo.

orden *ex parte* las menores estaban en periodo de verano[19], lo que significa que no asistían en ese momento al colegio; ACS declaró que la escuela había implementado un *Protocolo de cero contacto* entre las estudiantes;[20] ACS testificó, además, que la menor ABC estaría recibiendo atención médica institucionalizada[21] y luego estaría de viaje con su familia por un periodo de tiempo; y, por último, la menor EVQ se encontraba fuera de Puerto Rico, específicamente en Finlandia, al momento de expedirse la orden *ex parte* en su contra.[22]

De manera similar, y contrario al proceder mayoritario, opino que la expedición del auto de *certiorari* nos hubiese permitido evaluar la totalidad de la extensa prueba testifical que se presentó en las casi ocho (8) horas de vista de orden de protección final, en la que declararon ambas menores.[23] De esta forma, se

---

[19] La orden de protección ex parte se concedió el 18 de junio de 2025. *Recurso de certiorari,* Apéndice 3, pág. 144.

[20] Íd., pág. 153.

[21] Íd., pág. 149, 153 y 162.

[22] Íd., págs. 292-293.

[23] "La referida vista comenzó poco después de las 2:00 pm y se extendió, de forma casi ininterrumpida, hasta cerca de las 10:00 pm, y las dos (2) jóvenes involucradas fueron interrogadas y contrainterrogadas". *Escrito en cumplimiento de orden y oposición a expedición de auto,* de la parte recurrida ante el Tribunal de Apelaciones, *Apéndice 13*, nota 1, pág. 2.

hubiese podido evaluar si la conducta imputada configuró maltrato o grave daño emocional que requiriera protección.[24] Recordemos que toda orden de protección exige que la persona haya incurrido en violencia doméstica o conducta constitutiva del delito según tipificado en el estatuto, en el Código Penal o en cualquier otra ley especial. Véase, Art. 2.1 de la Ley Núm. 54 de 1989, 8 LPRA sec. 621.[25]

D.

Indistintamente de todo ello, soy del criterio de que en este caso se concedió el remedio más drástico: una orden de protección que imposibilitó a la menor EVQ de asistir a su escuela durante los primeros tres (3) meses de este semestre escolar, con el riesgo latente de que se solicite y conceda su extensión. A su vez, y tal cual se desprende de las alegaciones de la peticionaria, la

---

[24] Íd., págs. 156-157, 293, 296.

[25] Además, un estudio cuidadoso de la prueba testifical nos hubiese permitido resolver si la totalidad de la evidencia demostró, como alega la peticionaria, que: (1) la ansiedad y el conflicto de la menor ABC provenían exclusivamente de la presión ejercida por su madre ante la existencia de una relación afectiva del mismo sexo; (2) la menor ABC admitió que no quería divulgar la relación porque no deseaba que su madre se enterara, esa situación y no la conducta de EVQ era lo que le generaba ansiedad; (3) la ruptura de la relación entre las dos menores obedeció a la presión materna; (4) el origen del malestar fue un conflicto intrafamiliar y no un patrón de violencia doméstica; (5) se utilizó la Ley 54 de 1989 como un mecanismo para censurar una relación adolescente del mismo sexo, no para prevenir violencia; entre otros asuntos. *Urgente solicitud en auxilio de jurisdicción,* pág. 9.

exclusión social ya ocasionó el daño irreparable de privar a la menor EVQ de tomar la prueba estandarizada del *PSAT National Merit Scholarship Qualifying Test;* de participar en los clubes extracurriculares, como las competencias de las Naciones Unidas;[26] y de viajar a una competencia de robótica en Singapur, lo cual se suma a las consecuencias directas en su salud y bienestar emocional debido al aislamiento social.[27]

Además, todo parece indicar que la solicitud de un remedio judicial, en su inicio de manera *ex parte*, se concedió sin permitir que el equipo interdisciplinario escolar, como la directora escolar, profesores, profesionales de la conducta humana en el plantel escolar, como la psicóloga y los padres de ambas menores, agotaran esfuerzos razonables para atender la situación. Esto para asegurarse del cumplimiento y efectividad del mencionado *Protocolo de contacto cero* que garantizara a su vez el bienestar de ambas estudiantes, sin la exclusión de una de ellas como primer remedio con las consecuencias colaterales que ello acarrea.[28]

---

[26] Surge del expediente que la menor EVQ participa extracurricularmente en: *Science fair*, *Robotics*, Hogar Crecer, Model UN, Saga, *National Honor Society*. *Recurso de certiorari,* Apéndice 4, pág. 4.

[27] Véase, *Recurso de certiorari,* Apéndice 8, págs. 361-367.

[28] Sin dejar de un lado la inclusión de la información de la menor EVQ en los registros judiciales y de la Policía

En ese sentido, surge de autos que, a pesar de estar ambas en undécimo grado, las menores no cursan las mismas clases, debido a que la menor ABC sigue un currículo regular y la menor EVQ un currículo avanzado. De igual forma, surgió del testimonio de ambas menores que entre ellas no existe ningún tipo de comunicación desde junio de 2025.

Reitero que la medida más drástica privó a las partes de opciones mediadoras y más razonables, e incluso la de acoger el *Plan de manejo para que la menor [EVQ] asista a la escuela* que presentó y le propuso la peticionaria el 29 de agosto de 2025 al foro primario.[29] Soy del criterio que ello hubiese redundado en el mejor bienestar de ambas menores, sin imponerle una carga desproporcionada a una de ellas.

E.

Así las cosas, sostengo que las restricciones impuestas en la orden de protección en este momento le causan un grave perjuicio a una de las partes y ameritaba nuestra intervención revisora. **Ante las particularidades del presente caso, opino que el mecanismo de la orden de protección en virtud de la Ley Núm. 54 de 1989 no debió**

---

de Puerto Rico para poder dar cumplimiento a la referida orden de protección.

[29] *Recurso de certiorari,* Apéndice 4, pág. El referido plan fue declarado no ha lugar por el foro primario mediante una *Resolución* notificada el 4 de septiembre de 2025. Íd., Apéndice, 7.

**utilizarse para la sobre protección excesiva de una de las partes, a costa del ostracismo y exclusión social de la otra, máxime siendo ambas menores de edad y teniendo al alcance medidas menos onerosas que garantizaran la seguridad de ambas menores.**

Por todo ello, respetuosamente afirmo que procedía expedir tanto el auxilio de jurisdicción, como el recurso de *certiorari.* Como no puedo avalar esta denegatoria, **disiento.**

Luis F. Estrella Martínez
Juez Asociado
